EMILY JOHNSON HENN (SBN 269482)
KATHRYN E. CAHOY (SBN 298777)
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

MATTHEW Q. VERDIN (SBN 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: mverdin@cov.com

*Attorneys for Defendant Delta Air Lines, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

ETERNADA FUDGE and REYHANEH MANSOORI, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DELTA AIR LINES, INC.,

Defendant.

Case No. 2:24-cv-04531-HDV-SSC

**DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Hearing Date: September 19, 2024
Time: 10:00 a.m.
Judge: Hon. Hernán D. Vera
Courtroom: 5B

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 19, 2024, at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Hernán D. Vera, in the United States District Court for the Central District of California, Courtroom 5B, 350 West 1st Street, Los Angeles, California 90012, Defendant Delta Air Lines, Inc. ("Delta") will, and hereby does, move to dismiss the Complaint (Dkt. No. 1-1) of Plaintiffs Eternada Fudge and Reyhaneh Mansoori ("Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

The motion is based on this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities in Support of the Motion to Dismiss, the Declaration of Matthew Q. Verdin and accompanying exhibits, any additional briefing on this subject, and any such further evidence and argument as may be presented to the Court at or before the hearing on this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 2, 2024.

Dated: July 11, 2024

COVINGTON & BURLING LLP

By: */s/ Emily Johnson Henn*
Emily Johnson Henn

*Attorneys for Defendant*
*Delta Air Lines, Inc.*

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
III. ARGUMENT ..... 4
A. This Court Lacks Personal Jurisdiction Over Delta. ..... 4
1. The Contract Claim Should Be Dismissed for Lack of Specific Jurisdiction. ..... 5
2. The CIPA Claim Should Be Dismissed for Lack of Specific Jurisdiction. ..... 7
B. The Airline Deregulation Act ("ADA") Preempts Plaintiffs' Claims. 9
1. The ADA Broadly Preempts State Law Claims That Relate to an Airline's Rates, Routes, or Services. ..... 9
2. Plaintiffs' Claims Would Impede and Thus Relate to Delta's Services and Prices ..... 10
C. Plaintiffs Fail to State a Viable Claim for Relief. ..... 13
1. The Breach of Contract Claim Should Be Dismissed. ..... 13
2. The CIPA Claim Should Be Dismissed. ..... 16
D. Plaintiffs Lack Standing to Seek Injunctive Relief. ..... 23
IV. CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ABF Cap. Corp. v. Osley*,
414 F.3d 1061 (9th Cir. 2005) ....................16, 17

*Alatortev v. JetBlue Airways, Inc.*,
2018 WL 784434 (N.D. Cal. Feb. 7, 2018) ....................13

*In re Am. Airlines, Inc., Priv. Litig.*,
370 F. Supp. 2d 552 (N.D. Tex. 2005) ....................11, 13

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)....................10, 12, 13

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ....................6

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Jan. 05, 2023) ....................21

*Bliss v. CoreCivic, Inc.*,
978 F.3d 1144 (9th Cir. 2020) ....................23

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017)....................4

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ....................4

*In re: BPS Direct, LLC, & Cabela's, LLC, Wiretapping Litig.*,
2023 WL 8458245 (E.D. Pa. Dec. 5, 2023)....................24

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
582 U.S. 255 (2017)....................5

*Bruni Media, LLC v. AAPM Media Grp., LLC*,
2018 WL 7448916 (C.D. Cal. Dec. 4, 2018)....................5

*Burri L. PA v. Skurla*,
35 F.4th 1207 (9th Cir. 2022) ....................8

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 18

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 23

*Carroll v. J.M. Smucker Co.*,
2023 WL 4053796 (N.D. Cal. June 15, 2023) .......... 8

*Carter v. Round Point Mortg.*,
2020 WL 6032653 (C.D. Cal. Aug. 4, 2020) .......... 6

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 23

*CJ Freshway Am. Corp. v. Meshquat Int'l Trading Co.*,
2022 WL 16942831 (C.D. Cal. Sept. 2, 2022) .......... 3

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) .......... 22

*Cooper v. Certain Underwriters at Lloyd's, London*,
716 F. App'x 735 (9th Cir. 2018) .......... 17

*Copeland v. Nw. Airlines Corp.*,
2005 WL 2365255 (W.D. Tenn. Feb. 28, 2005) .......... 11

*Daghaly v. Bloomingdales.com, LLC*,
2023 WL 6538382 (S.D. Cal. Oct. 6, 2023) .......... 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 22

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 19, 20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 5

*People ex rel. Harris v. Delta Air Lines, Inc.*,
247 Cal. App. 4th 884 (2016) .......... 11

*Heinz v. Amazon.com Inc.*,
2024 WL 2091108 (W.D. Wash. May 8, 2024) .......... 18

*Jacome v. Spirit Airlines Inc.*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .......... 20

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) .......... 11

*Johnson v. UBS AG*,
860 F. App'x 531 (9th Cir. 2021) .......... 6

*Jones v. Peloton Interactive, Inc.*,
2024 WL 1123237 (S.D. Cal. Mar. 12, 2024) .......... 23

*Kislov v. Am. Airlines, Inc.*,
2022 WL 846840 (N.D. Ill. Mar. 22, 2022) .......... 2, 10

*Knight Indus., Inc. v. Turner Mktg., Inc.*,
157 Ga. App. 177 (1981) .......... 13

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
2015 WL 1289984 (N.D. Cal. Mar. 20, 2015) .......... 9

*LLC v. Super. Ct.*,
189 Cal. App. 4th 500 (2010) .......... 17

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .......... 21

*Maddalena v. Toole*,
2013 WL 5491869 (C.D. Cal. Oct. 1, 2013) .......... 23

*Markos v. Sears, Roebuck & Co.*,
2005 WL 8155228 (C.D. Cal. Oct. 4, 2005) .......... 17

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) .......... 5, 8

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 18

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) .......... 6

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 16

*McAlister v. Clifton*,
313 Ga. 737 (2022) ....................16

*McGarry v. Delta Air Lines, Inc.*,
2019 WL 1885613 (C.D. Cal. Apr. 16, 2019) ....................10, 11

*McGarry v. Delta Air Lines, Inc.*,
2019 WL 2558199 (C.D. Cal. June 18, 2019) ....................10, 11

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ....................6

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ....................9, 12

*Muhammad v. O'Brien*,
2021 WL 3417598 (N.D. Ga. Apr. 5, 2021) ....................14

*Nedlloyd Lines B.V. v. Super. Ct.*,
3 Cal. 4th 459 (1992) ....................16

*Northwest, Inc. v. Ginsberg*,
572 U.S. 273 (2014) ....................10, 12

*Palomino v. Facebook, Inc.*,
2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ....................18

*Patron Aviation Corp. v. Bus. Aircraft Grp., Inc.*,
2005 WL 8154301 (N.D. Ga. Mar. 2, 2005) ....................15

*Pena v. Brit. Airways, PLC (UK)*,
2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020) ....................11

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................19

*Pica v. Delta Air Lines, Inc.*,
2019 WL 1598761 (C.D. Cal. Feb. 14, 2019) ....................10, 11, 13

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ....................5, 7

*Pulte Home Corp. v. TIG Ins. Co.*,
794 F. App'x 587 (9th Cir. 2019) ....................17

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) .......... 19

*Rowe v. New Hampshire Motor Transp. Ass'n*,
552 U.S. 364 (2008) .......... 9, 12

*Sacco v. Mouseflow, Inc.*,
2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) .......... 7, 8

*Sameena Inc. v. U.S. Air Force*,
147 F.3d 1148 (9th Cir. 1998) .......... 9

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) .......... 20

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 7

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 19

*Spencer v. Delta Air Lines, Inc.*,
2023 WL 7312966 (C.D. Cal. Oct. 2, 2023) .......... 13, 15

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) .......... 18

*United States v. Ritchie*,
342 F.2d 903 (9th Cir. 2003) .......... 3

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 6, 7

*Wash. Mut. Bank, FA v. Super. Ct.*,
24 Cal. 4th 906 (2001) .......... 16, 17

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 18

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 22

*Zarif v. Hwareh.com, Inc.*,
2023 WL 5242452 (S.D. Cal. Aug. 15, 2023) .......... 7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................22

**Statutes**

49 U.S.C. § 41713 ....................9

Cal. Penal Code § 631 .................... *passim*

Ga. Code § 16-11-62 ....................17

## I. INTRODUCTION

Delta Air Lines, a leader in domestic and international travel services, offers consumers the ability to purchase flights to over 300 destinations in 60 countries through its website (www.delta.com). When consumers book a flight on Delta's website, they agree to Delta's Contract of Carriage, which states that "[a]ll passenger information shall be handled in accordance with Delta's Privacy Policy." Compl. ¶ 32. Delta's Privacy Policy, in turn, discloses that Delta, like thousands of other companies, employs digital tools "used by . . . Facebook . . . to target and re-target visitors to our Website . . . with digital advertising." *Id.* ¶ 67.

Plaintiffs Eternada Fudge and Reyhaneh Mansoori are two consumers who booked travel on Delta's website. No one disputes that the Contract of Carriage expressly authorizes the airline to use Facebook's digital tool—the Facebook pixel—to collect information about Plaintiffs to serve Plaintiffs with relevant advertisements about Delta's services. Plaintiffs nevertheless seek to pursue a breach of contract and California Invasion of Privacy Act ("CIPA") claim based on the theory that the Contract of Carriage somehow modified this express authorization to prohibit the use of Plaintiffs' information entered while booking Delta flights.

For multiple reasons, Plaintiffs' Complaint should be dismissed.

*First*, this Court lacks personal jurisdiction over Delta. Plaintiffs carry the burden to establish jurisdiction, and they do not allege that their claims arise out of or relate to activities in California or that Delta purposefully directed any relevant activities to California.

*Second*, to the extent the Court could exercise jurisdiction, the Airline Deregulation Act ("ADA") preempts Plaintiffs' claims. Plaintiffs' claims relate to a core part of the aviation services Delta provides: access to Delta's flights through the offer and sale of fares on Delta's website. For this reason, "courts in the Ninth Circuit have held preempted claims concerning [Delta's] handling of customer data collected when plaintiffs made

reservations or purchased tickets," and this Court should hold the same. *Kislov v. Am. Airlines, Inc.*, 2022 WL 846840, at *4 n.1 (N.D. Ill. Mar. 22, 2022) (collecting cases finding claims against airline preempted).

*Third*, the Complaint fails to state a viable claim for breach of contract or violation of CIPA section 631. Contrary to Plaintiffs' assertions, Delta's Contract of Carriage does not prohibit, and in fact expressly authorizes, the challenged use of the Facebook pixel tool. This ends the inquiry into both of Plaintiffs' claims because it establishes that Delta did not breach the Contract of Carriage and that Plaintiffs consented to the alleged data practices. Moreover, Plaintiffs cannot pursue claims under California law when they have agreed to the Georgia choice-of-law provision in the Contract of Carriage.

*Finally*, because Plaintiffs cannot demonstrate a likelihood that they will be wronged again in a similar way, they lack Article III standing to seek injunctive relief.

## II. BACKGROUND[1]

***Delta's Alleged Use of the Facebook Pixel Tool.*** Facebook provides web-based advertising services to help Delta and others "better reach and serve people who might be interested in their . . . services." Compl. ¶ 74. Plaintiffs contend that, in order to use Facebook's advertising services, Delta "installed" the Facebook pixel tool (also known as a "pixel tag" or "tag") on its website (www.delta.com), including the part of its website offering consumers the ability to book Delta flights. *Id.* ¶¶ 2, 57. When consumers "enter and submit their information to complete [a] booking," the pixel tool allegedly sends that information to Facebook. *Id.* ¶¶ 47, 57. Plaintiffs assert that this allows Delta to then use Facebook's services "to deliver targeted advertisements" of Delta's "services" to those same consumers "on Facebook." *Id.* ¶¶ 8, 81.

[1] By referencing the Complaint's allegations in connection with this motion to dismiss, Delta is not admitting their truth.

"As part of the booking process," Delta "requires that consumers agree to its [Contract] of Carriage, which incorporates" Delta's "Privacy Policy." *Id.* ¶ 31. Delta's Privacy Policy discloses that Delta "engage[s] third party tracking and advertising providers . . . to track and analyze your usage of our Website through the use of cookies, pixel tags / web beacons, and similar technologies," and that Delta uses such technologies "used by . . . Facebook," in particular, "to target and re-target visitors to our Website with digital advertising." *See* Verdin. Decl. Exs. 1–3 §§ 6.1, 6.2.[2] Plaintiffs admit that they each "agreed" to Delta's "[Contract] of Carriage and incorporated Privacy Policy" when booking Delta flights online. Compl. ¶ 3.

***Plaintiffs' Booking of Flights on Delta's Website.*** Plaintiffs Eternada Fudge and Reyhaneh Mansoori assert they are California residents with "active Facebook account[s]" who allege to have visited Delta's website "to reserve air travel." Compl. ¶¶ 16–17, 19, 22–23, 25. Plaintiff Fudge allegedly visited Delta's website on May 1, 2023, August 21, 2023, and January 30, 2024 (*id.* ¶ 17), and Plaintiff Mansoori allegedly visited Delta's website on February 23, 2022 (*id.* ¶ 23). During each of these visits, Plaintiffs allege that they "booked airfare" and submitted "personal information" with their "flight reservation information" to "complete the booking," including their "full name, departure date, departure airport, arrival date, arrival airport, travel class, number of travelers, loyalty status, language, and currency used." *Id.* ¶¶ 17, 23, 47. With the exception of Plaintiffs'

---

[2] The Court may consider Delta's Contract of Carriage and incorporated Privacy Policy in effect at the time of Plaintiffs' alleged visits to Delta's website (*see* Verdin Decl. Exs. 1–8) under the incorporation-by-reference doctrine because the Complaint "refers extensively to the document[s]" and they "form the basis" of Plaintiffs' claims, including their breach of contract claim. *CJ Freshway Am. Corp. v. Meshquat Int'l Trading Co.*, 2022 WL 16942831, at *2 (C.D. Cal. Sept. 2, 2022) (quoting *United States v. Ritchie*, 342 F.2d 903, 908 (9th Cir. 2003) (considering contract that formed the basis of a plaintiff's contract claim as incorporated by reference)).

names, the Complaint alleges that the Facebook pixel tool transmitted this booking information to Facebook, in addition to "their Facebook ID." *Id.* ¶¶ 20, 26, 38, 58.

***This Lawsuit.*** In April 2024, Plaintiffs filed their Complaint against Delta for allegedly "sharing" Plaintiffs' "personal information" entered "while booking air travel online" with Facebook through use of the Facebook pixel tool. *Id.* ¶¶ 2–3, 8. Plaintiffs assert that Delta's alleged conduct breached the Contract of Carriage (and incorporated Privacy Policy) and violated CIPA section 631. *Id.* ¶¶ 111–124, 125–145. They bring their claims on behalf of a putative nationwide class and California subclass of persons who "provided their personal information to Delta using www.delta.com in connection with their purchase of airfare, were registered Facebook users, and had their personal information shared with Facebook." *Id.* ¶ 102. In May 2024, Delta removed this action from California Superior Court under the Class Action Fairness Act. *See* Dkt. 1.

## III. ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over Delta.

Plaintiffs bear the burden of establishing personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state"—here, California. *Id.* "California's long-arm statute is co-extensive with federal standards," which permit two forms of jurisdiction: "general jurisdiction and specific jurisdiction." *Id.* at 1015–16. The Complaint invokes only specific jurisdiction.[3] Plaintiffs assert a contract and CIPA claim, and they must demonstrate "for each claim" that (1) Delta purposefully availed itself of the

---

[3] Plaintiffs acknowledged that Delta is not subject to general jurisdiction in California during the parties' meet and confer pursuant to Local Rule 7-3. Nor could they argue otherwise, because Delta is incorporated in Delaware with its principal place of business in Georgia. Compl. ¶ 28; *see BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) ("paradigm forums" for general jurisdiction are "place of incorporation and [] principal place of business").

benefits of California (for their contract claim) or purposefully directed its activities at the forum state (for their CIPA claim), and (2) Plaintiffs' claims arise out of or relate to Delta's California activities. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *see Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 837 (N.D. Cal. 2021) (applying purposeful-direction test to CIPA claims); *Bruni Media, LLC v. AAPM Media Grp., LLC*, 2018 WL 7448916, at *4 (C.D. Cal. Dec. 4, 2018) (applying purposeful-availment test to contract claim). Plaintiffs fail to plead facts demonstrating that Delta is subject to specific jurisdiction as to either claim they assert.

**1. The Contract Claim Should Be Dismissed for Lack of Specific Jurisdiction.**

Plaintiffs fail to plead facts establishing that their contract claim "arises out of or relates to" any of Delta's alleged contacts with California. Courts require specific allegations of "a connection between the forum and the specific claims at issue"—"unconnected activities" will not support specific jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 264–65 (2017).

Here, Plaintiffs' contract claim stems from alleged conduct that occurred *outside* of California: they allege that Delta used the Facebook pixel tool on its nationally accessible website operated from Georgia, where Delta's principal place of business is located (Compl. ¶¶ 2, 28), and that this conduct allegedly violated Delta's Contract of Carriage, which is governed by Georgia law (*id.* ¶¶ 3, 112). As the Supreme Court has instructed, "California courts cannot claim specific jurisdiction" when "all the conduct giving rise to the [plaintiffs'] claims occurred elsewhere." *Bristol-Myers Squibb*, 582 U.S. at 265. California courts have followed this instruction to repeatedly dismiss for lack of specific jurisdiction similar claims premised on an out-of-state business's use of website tools, and the same result is warranted here. *See, e.g.*, *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *3, 6 (E.D. Cal. May 26, 2021) (dismissing claim based on alleged use of website tool on nationally accessible website "operated from Michigan," where defendant's principal

place of business was located); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 867–68 (S.D. Cal. 2023) (similar); *see also Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (no specific jurisdiction where plaintiff's "claims 'arise from' only the online activities that [defendant] aimed at the entire world").

Rather than identify any connection between California and Plaintiffs' contract claim, the Complaint simply alleges that Delta engages in "business" activities in California and is "licensed" to do so. Compl. ¶ 14. Plaintiffs do not say what those activities are or how they could relate to their claim premised on Delta's alleged use of the Facebook pixel tool on its website from its Georgia headquarters. Such bare allegations cannot establish relatedness. *See Johnson v. UBS AG*, 860 F. App'x 531, 533 (9th Cir. 2021) (no relatedness based on allegation of "business" activities in California "unconnected" to plaintiffs' claims); *Carter v. Round Point Mortg.*, 2020 WL 6032653, at *3 (C.D. Cal. Aug. 4, 2020) (no relatedness based on allegation of "California license" unconnected to plaintiff's claims).

It makes no difference that Delta allegedly obtained the website tool (the Facebook pixel) from a California company (Facebook). Plaintiffs must identify "contacts that the defendant *himself* creates with the forum State"—"not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). "[T]he Court cannot find that Defendant satisfies the minimum contacts requirement by using a tool developed and operated by a California entity." *Daghaly v. Bloomingdales.com, LLC*, 2023 WL 6538382, at *3 (S.D. Cal. Oct. 6, 2023) (no relatedness based on defendant's alleged use of Facebook pixel); *see AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 (9th Cir. 2020) (no jurisdiction based on defendant's use of website-related services offered by a vendor within the forum).

In the end, nothing links Delta and Plaintiffs' contract claim to California beyond the allegation that Plaintiffs "reside in California" and chose to access Delta's website from

within the state. *See* Compl. ¶¶ 14, 16–17, 22–23, 134. "But the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 284–85 (explaining that the "relationship must arise out of contacts that the defendant himself creates with the forum State"). Plaintiffs' contract claim thus should be dismissed for lack of jurisdiction.

**2. The CIPA Claim Should Be Dismissed for Lack of Specific Jurisdiction.**

Plaintiffs' CIPA claim should likewise be dismissed because Plaintiffs fail to establish the purposeful direction or relatedness requirements for specific jurisdiction.

***No Purposeful Direction.*** To establish purposeful direction, Plaintiffs must allege facts demonstrating that Delta (1) "expressly aimed" the allegedly tortious conduct at California, and (2) caused harm that it knew was "likely to be suffered" in California. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).

*First*, Plaintiffs do not plead facts establishing the express aiming requirement. "[E]xpress aiming asks whether the defendant's allegedly tortious action was expressly aimed at the forum." *Picot*, 780 F.3d at 1214. Here, the allegedly tortious conduct is the use of the Facebook pixel tool on Delta's globally accessible website to collect consumers' air travel booking information (Compl. ¶¶ 2, 130), and Plaintiffs do not allege this is conduct specific to California consumers. The Ninth Circuit has made clear that the express aiming requirement is not satisfied when a plaintiff would have experienced the same injury "wherever he might choose to live or travel." *Picot*, 780 F.3d at 1214–15. Where "[t]he alleged harm—the recording of Plaintiff[s'] visit[s] to [Delta's] website and the collection of [their] personal data—would have occurred no matter the state Plaintiff[s] w[ere] in," the express aiming requirement is not satisfied. *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022).

For these reasons, California courts routinely dismiss privacy claims premised on the use of the Facebook pixel and other website tools for failure to plead express aiming. *Zarif v. Hwareh.com, Inc.*, 2023 WL 5242452, at *4 (S.D. Cal. Aug. 15, 2023) (dismissing

wiretapping claims based on defendant's use of Facebook pixel that did not "target[] California . . . [or] a known California resident"); *Carroll v. J.M. Smucker Co.*, 2023 WL 4053796, at *4 (N.D. Cal. June 15, 2023) (dismissing claims arising from use of Facebook pixel where website "offered an identical experience regardless of the forum of access"); *Sacco*, 2022 WL4663361, at *5 (dismissing CIPA claims based on alleged use of a website tool to collect data where "[d]efendant did nothing specifically directed at California or California residents to tether it to this forum"); *Massie*, 2021 WL 2142728, at *4–6 (dismissing CIPA claim based on defendant's use of website tool that "does not target California or distinguish California from any other state").

*Second*, Plaintiffs also fail to plead that Delta knew that Plaintiffs were likely to be harmed in California. *Burri L. PA v. Skurla*, 35 F.4th 1207, 1215 (9th Cir. 2022) (knowledge prong asks whether defendant knew conduct was "likely to cause [plaintiff] harm in the forum state"). The Complaint offers no allegations to support this jurisdictional requirement. Nor could Plaintiffs allege facts showing that harm was more likely to be caused here because "the alleged harm would have occurred regardless of the location [from which] Plaintiff[s] visited the [defendant's] website." *Sacco*, 2022 WL 4663361, at *5 n.2 (no knowledge that website tool "was more likely to cause harm" to California plaintiff "in California than any other forum").

***No Relatedness.*** Plaintiffs' CIPA claim is premised on the same conduct as the contract claim: the alleged use of the Facebook pixel tool on Delta's globally accessible website operated from its Georgia headquarters. Compl. ¶¶ 2, 4, 28. Like the contract claim, Plaintiffs do not contend in their Complaint that their alleged use of Delta's globally accessible website is in anyway related to, for example, aircraft taking off from or landing at California airports. For those same reasons that Plaintiffs have not carried their burden to establish that their contract claim "relates to or arises from" Delta's California activities, they also have not done so for their CIPA claim. *Supra* Part III.A.1; *see, e.g.*, *Massie*, 2021 WL 2142728, at *6 (dismissing for lack of personal jurisdiction CIPA claim relating to

defendant's use of software tool on website "operated from Michigan," as opposed to any "conduct in California").

### B. The Airline Deregulation Act ("ADA") Preempts Plaintiffs' Claims.

Even assuming the Court could exercise personal jurisdiction, Plaintiffs' claims would be preempted by the ADA.[4]

#### 1. The ADA Broadly Preempts State Law Claims That Relate to an Airline's Rates, Routes, or Services.

The Airline Deregulation Act of 1978 expressly preempts state laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Congress enacted the ADA to promote "efficiency, innovation, and low prices" in the airline industry by facilitating "maximum reliance on competitive market forces." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). By including a "broadly worded" and "deliberately expansive" preemption clause, Congress sought to "ensure that the States would not undo federal deregulation with regulation of their own." *Id.* at 378, 384. This reflects Congress's judgment that airlines should operate under a single, federal regulatory framework, instead of "a patchwork of state . . . laws, rules, and regulations." *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008).

In accordance with the ADA's "broad pre-emptive purpose," the ADA preempts state laws even if the law "is not specifically designed to affect" prices, routes, or services. *Morales*, 504 U.S. at 383, 386. For example, the Supreme Court has held that the ADA preempts both state statutory claims and common law claims relating to advertising practices, *id.* at 391 (state consumer protection statute), flight tickets or class-of-service

---

[4] Although Delta is not subject to personal jurisdiction (*supra* at pp. 4–9), the Court "may assume the existence of personal jurisdiction and adjudicate the merits in favor of [a] defendant without making a definitive ruling on jurisdiction." *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1152 n.1 (9th Cir. 1998); *see, e.g.*, *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, 2015 WL 1289984, at *2 (N.D. Cal. Mar. 20, 2015) (dismissing claim on the merits in lieu of addressing personal jurisdiction).

upgrades, *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 226–28 (1995) (state consumer protection statute), and frequent flyer programs, *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 289 (2014) (implied covenant claim). In each of these cases, the Supreme Court concluded the claims had some connection to, and therefore "related to," a core part of the "services" that an airline provides—namely, "access to flights." *McGarry v. Delta Air Lines, Inc.*, 2019 WL 2558199, at *4 (C.D. Cal. June 18, 2019) (discussing Supreme Court authority), *aff'd*, 812 F. App'x 625 (9th Cir. 2020).

**2. Plaintiffs' Claims Would Impede and Thus Relate to Delta's Services and Prices.**

Plaintiffs' claims target the core part of the services Delta provides: access to Delta's flights through its offering and sale of those flights on Delta.com. Specifically, Plaintiffs challenge Delta's handling of their "private and personal information" entered "while booking air travel" on Delta's website. Compl. ¶¶ 8, 133; *see also id.* ¶¶ 75, 117, 135.

"[C]ourts in the Ninth Circuit have held preempted claims" like Plaintiffs "concerning [Delta's] handling of customer data collected when plaintiffs made reservations or purchased tickets." *Kislov*, 2022 WL 846840, at *4 n.1 (collecting cases). In *McGarry v. Delta Air Lines, Inc.*, for example, a plaintiff challenged Delta's handling of PII entered while booking air travel on Delta's website and alleged that this conduct violated Delta's Privacy Policy. 2019 WL 2558199, at *1, *6–7. The *McGarry* court held that the ADA preempted the plaintiff's claims because they "directly relate to [Delta's] primary services, the purchase and sales of air transportation services." 2019 WL 1885613, at *5 (C.D. Cal. June 18, 2019); *see McGarry*, 2019 WL 2558199, at *5–7 (similar); *see also, e.g.*, *Pica v. Delta Air Lines, Inc.*, 2019 WL 1598761, at *2, 4–6 (C.D. Cal. Feb. 14, 2019) (holding that the ADA preempted a claim challenging Delta's alleged "sharing [of] customers PII" entered while booking online travel with a third party).

The California Court of Appeal similarly held that the ADA preempted a claim relating to Delta's handling of PII on the "Fly Delta mobile application," which, like

Delta's website at issue here, allows consumers to book travel online. *See People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 888, 891–93 (2016) (challenging Delta's alleged failure to post a privacy policy concerning the collection and sharing of PII). "[I]t is clear, beyond cavil," the court reasoned, that this claim "relates to" Delta's services, because "[t]he Fly Delta mobile application [was] selected and designed to facilitate access to the airline's services," including "rebook[ing] cancelled or missed flights." *Id.* at 901. Plaintiff's claim would have a "significant impact upon the airline's ability to market its product through its Fly Delta mobile application, and hence a significant impact upon the fares they charge." *Id.* at 903. As a result, Plaintiff's claim related to Delta's prices as well—an independent grounds for ADA preemption. *Id.*

Courts across the country have reached the same conclusion as the trio of Delta cases (*McGarry*, *Pica*, and *Harris*) in similar privacy cases against other airlines: the ADA preempts claims concerning an airline's handling of customers' "personal information" collected "when taking reservations or selling air transportation." *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005) (ADA preempts claims alleging airline shared booking information with third party in violation of privacy policy); *see also, e.g.*, *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 315–16 (E.D.N.Y. 2005) (similar); *Copeland v. Nw. Airlines Corp.*, 2005 WL 2365255, at *3 (W.D. Tenn. Feb. 28, 2005) (similar); *Pena v. Brit. Airways, PLC (UK)*, 2020 WL 3989055, at *1, 6 (E.D.N.Y. Mar. 30, 2020) (ADA preempts claims alleging airline mishandled customers' booking information), *aff'd*, 849 F. App'x 13 (2d Cir. 2021).

As these cases establish, the broad scope of ADA preemption forecloses Plaintiffs' attempt to challenge Delta's handling of Plaintiffs' information collected while booking air travel online. That challenge "directly relate[s]" to one of Delta's "primary services": "the purchase and sales of air transportation services." *McGarry*, 2019 WL 1885613, at *5. In fact, Plaintiffs' theory is that Delta allegedly mishandled Plaintiffs' booking information

in breach of the Contract of Carriage itself, which "states the terms upon which Delta offers" its service "to transport passengers." Verdin Decl. Exs. 4–6 at 2.

Allowing Plaintiffs' claims to proceed would unquestionably have a significant effect on Delta's services in offering and selling flights online—and indeed, its prices as well. Plaintiffs ask this Court to enjoin or modify Delta's alleged use of the Facebook pixel tool to "advertis[e] its services" (Compl. ¶ 75), in direct contravention of "the ADA's purpose to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms." *Wolens*, 513 U.S. at 228. As the Complaint acknowledges, Delta allegedly "benefits" from using the Facebook pixel tool because it gives Delta the ability "to deliver targeted advertisements" for "its services" and results in "more cost-efficient marketing." Compl. ¶¶ 8, 75, 79. Plaintiffs' claims thus "would have a significant impact upon [Delta's] ability to market [its] product [through its website], and hence a significant impact upon the fares they charge" as well. *Morales*, 504 U.S. at 390. The Supreme Court has held that the ADA preempts state law claims like Plaintiffs', which seek to "police the marketing practices of [an] airline[]." *Wolens*, 513 U.S. at 228.

Plaintiffs point to a March 2024 announcement from the U.S. Department of Transportation ("DOT") stating its intent to regulate the same type of conduct alleged here, but that does not help Plaintiffs. Compl. ¶¶ 93–96. "[I]n respect to pre-emption, it makes no difference whether a state law is 'consistent' or 'inconsistent' with federal regulation." *Rowe*, 552 U.S. at 370. If anything, the fact that Congress may have delegated authority to the DOT to uniformly regulate airlines' collection of consumer data supports a finding of preemption. *See Morales*, 504 U.S. at 390–91 (ADA preempted claims where "the DOT retains the power to prohibit advertisements" at issue if it determines they "do not further competitive pricing"); *Northwest*, 572 U.S. at 288–89 (DOT regulation of frequent flyer programs supports finding of preemption). Absent a finding of preemption, Delta would be subjected to the costs and burdens of complying with a patchwork of non-uniform and potentially inconsistent state laws. This is precisely the type of state regulatory interference

that ADA preemption is designed to prevent. *See Am. Airlines*, 370 F. Supp. 2d at 564 ("Congress surely intended to immunize airlines from a host of potentially-varying state laws . . . that could effectively dictate how they manage personal information collected from customers to facilitate the ticketing and reservation functions that are integral to the operation of a commercial airline.").

Nor does the narrow exception for contract claims arising out of an airline's "own, self-imposed undertakings" apply to Plaintiffs' contract claim. *Wolens*, 513 U.S. at 228. As explained below (*see infra* at 13–15), Delta's Contract of Carriage does not prohibit—and indeed, expressly authorizes—the challenged data collection practices. "[P]ermitting Plaintiffs to read into [Delta's] Contract of Carriage additional obligations would be a direct circumvention of the broad pre-emptive sweep of the ADA." *Pica*, 2019 WL 1598761, at *5 (holding that the ADA preempted a plaintiff's contract claim relating to Delta's Contract of Carriage); *see also Alatortev v. JetBlue Airways, Inc.*, 2018 WL 784434, at *6 (N.D. Cal. Feb. 7, 2018) (holding that the ADA preempted a plaintiff's contract claim that depended on "enlargement or enhancement" of the express terms of the parties' agreement).

**C. Plaintiffs Fail to State a Viable Claim for Relief.**

Plaintiffs' claims also should be dismissed for failure to state a breach of contract or CIPA claim.

**1. The Breach of Contract Claim Should Be Dismissed.**

Plaintiffs' breach of contract claim fails because the plain language of Delta's Contract of Carriage authorized use of the Facebook pixel tool for advertising purposes.

Under Georgia law, "[t]here can be no breach where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Knight Indus., Inc. v. Turner Mktg., Inc.*, 157 Ga. App. 177, 178 (1981); *see, e.g.*, *Spencer v. Delta Air Lines, Inc.*, 2023 WL 7312966, at *4 (C.D. Cal. Oct. 2, 2023) (dismissing breach of contract claim

for failure to refund fees because Delta's Contract of Carriage expressly stated that Delta would not refund the fees); *Muhammad v. O'Brien*, 2021 WL 3417598, at *15 (N.D. Ga. Apr. 5, 2021) (dismissing breach of contract claim when allegations were contradicted by terms of contract), *report and recommendation adopted*, 2021 WL 3464384 (N.D. Ga. Aug. 6, 2021).

That precludes Plaintiffs' claim here. Plaintiffs allege that Delta "breached" the Contract of Carriage "by sharing its customers' personal information" entered while booking air travel online "with Facebook, a third party," "to deliver targeted advertisements" of "its services." Compl. ¶¶ 8, 65, 117. But the Contract of Carriage expressly authorized Delta to do so. According to Delta's "incorporated Privacy Policy" (*id.* ¶ 113), Delta "has engaged third party tracking and advertising providers" like Facebook "to act on behalf of Delta's behalf to track and analyze your usage of our Website through the use of cookies, pixel tags / web beacons, and similar technologies." Verdin Decl. Exs. 1–3 § 6.1. In fact, Delta expressly discloses its use of "cookies" (defined as "cookies, tags, and other similar technologies" like "pixel tags") "used by . . . Facebook," in particular, "to target and re-target visitors to our Website" like Plaintiffs "with digital advertising." *Id.* §§ 6.1 6.2. Plaintiffs agreed to each of these contractual provisions (*see* Compl. ¶¶ 3, 67–68), which forecloses their contract claim.

Contrary to Plaintiffs' assertions, there is no exception to these advertising disclosures for "personal information" from Plaintiffs' online flight booking. *Id.* ¶ 67. As the Complaint acknowledges, Delta's Contract of Carriage provides that "*All* passenger information shall be handled in accordance with Delta's Privacy Policy" (*id.* ¶ 115), which "describes our practices related to the use, storage, and disclosure of *personal information* we collect from or about you . . . when you use our website." Verdin Decl. Exs. 1–3 § 1 (emphasis added); *see also id.* § 4.1 (disclosing that "[i]nformation related to a flight booking" is used to "send you marketing communications"). Plaintiffs' assertion that they did not agree to the sharing of their personal information is also implausible: they agree

that Delta may use the Facebook pixel tool "to target" Plaintiffs personally with advertising on Facebook (*see* Compl. ¶¶ 8, 81), as disclosed in Delta's Privacy Policy, yet they do not explain how Delta could deliver personal advertisements to Plaintiffs on Facebook without using the Facebook pixel tool "in a manner that allows Facebook to personally identify them" (*id.* ¶ 66).

Plaintiffs' attempts to identify language contradicting these express provisions are unconvincing. For example, they point to Delta's representation that it will "not sell your name or other personal information to third parties" (*id.* ¶ 116), but Plaintiffs acknowledge that Delta did not sell their personal information to Facebook. *Id.* ¶ 70 (acknowledging that Facebook "offers the Pixel free of charge"). Plaintiffs then point to a "general" disclosure authorizing Delta to "share with" any "third parties anonymous, aggregated information about all our users" (Verdin Decl. Exs. 1–3 § 7.1; Compl. ¶ 116), contending that this amounted to a promise "not to . . . share [personal information] in an identifiable and disaggregated manner" (*id.* ¶ 34). However, it is well established under Georgia law, as elsewhere, "that specific provisions in a contract prevail over any conflicting general language." *Patron Aviation Corp. v. Bus. Aircraft Grp., Inc.*, 2005 WL 8154301, at *3 (N.D. Ga. Mar. 2, 2005). As explained above, the specific provisions of the Contract of Carriage expressly authorize the alleged conduct of which Plaintiffs complain. Because the provisions authorizing Delta's alleged conduct "are plain and unambiguous," this Court should reject Plaintiffs' invitation "to strain the construction of [the] contract, so as to discover an ambiguity" where there is none. *Spencer*, 2023 WL 7312966, at *4.

In sum, because Delta complied with the actual, express terms of the Contract of Carriage, including the incorporated Privacy Policy, it cannot be liable for breach of contract.[5]

---

[5] Plaintiffs' failure to plausibly allege damages provides an independent grounds for dismissal. "Proof of damages is an essential element to a claim for breach of contract, and

### 2. The CIPA Claim Should Be Dismissed.

#### a) California Law Does Not Apply.

There is no basis to apply the California Invasion of Privacy Act ("CIPA") because Delta's Contract of Carriage "to which Plaintiffs . . . agreed" (Compl. ¶ 3) specifies that Georgia—not California—law applies to this dispute.

California's choice-of-law rules govern which law applies to Plaintiffs' wiretap claim. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law."). As compared to other states, California has adopted a "strong policy favoring enforcement" of choice-of-law provisions. *ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) (quoting *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 465 (1992)). California courts enforce choice-of-law provisions so long as (1) a plaintiff's claims "fall within the scope of a choice-of-law clause" and (2) "the chosen state has a substantial relationship to the parties or their transaction" or "a reasonable basis otherwise exists for the choice of law." *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916 (2001) (reiterating the "strong policy considerations favoring the enforcement" of choice-of-law provisions).

Here, Plaintiffs' claim fits squarely within the broad scope of the Georgia choice-of-law provision in Delta's Contract of Carriage. That provision states, "Any and all matters arising out of or relating to the Contract of Carriage and/or the subject matter hereof shall be governed by and enforced in accordance with . . . the laws of the State of Georgia . . . , regardless of the legal theory upon which such matter is asserted." Verdin Decl. Exs. 4–6 at 25; *see also* Compl. ¶ 112. Plaintiffs' claim challenging Delta's alleged "sharing of

---

a failure to prove damages is fatal to a plaintiff's claim." *McAlister v. Clifton*, 313 Ga. 737, 742 (2022). Plaintiffs allege that they were "harmed" from Delta's alleged use of the Facebook pixel tool (Compl. ¶ 82–92), but they do not plead facts to render that allegation plausible.

information" with Facebook (Compl. ¶ 136) plainly "relates" to the Contract of Carriage or the "subject matter" therein. By Plaintiffs' own admission, the Contract of Carriage governs "how Defendant will use and share consumer data." *Id.* ¶ 32. Indeed, the very premise of Plaintiffs' Complaint is that Delta's alleged "sharing of information" about Plaintiffs with Facebook (*id.* ¶ 136) was proscribed by and "breached" the Contract of Carriage (*id.* ¶ 117).

Georgia also has a substantial relationship to the transaction because Delta's principal place of business is located there (*id.* ¶ 28). *See ABF Cap. Corp.*, 414 F.3d at 1065 ("A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state."); *Pulte Home Corp. v. TIG Ins. Co.*, 794 F. App'x 587, 589 (9th Cir. 2019) (finding a "reasonable basis for choosing Georgia law, because Defendant's principal place of business was in Georgia"). Moreover, Delta's Contract of Carriage applies to travel on Delta flights "within the United States of America" (Verdin Decl. Exs. 4–6 at 2) by *all* consumers, and not just California consumers like Plaintiffs. Delta therefore "has an interest in having its" Contract of Carriage "governed by one body of law." *1-800-Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 505 (2010) (finding "reasonable basis" for chosen state's law based on interest in "uniformity"); *see also Cooper v. Certain Underwriters at Lloyd's, London*, 716 F. App'x 735, 736 (9th Cir. 2018) (recognizing "interest in contracting under the laws of a state . . . for reasons of uniformity and predictability").

The narrow exception to enforcement of a choice-of-law provision when "the other side"—here, Plaintiffs—"can establish . . . that the chosen law is contrary to a fundamental policy of California" does not apply. *Wash. Mut. Bank*, 24 Cal. 4th at 917. Georgia also provides a cause of action for wiretapping. *See* Ga. Code § 16-11-62. Where, as here, the parties' chosen state law provides an equivalent cause of action, courts have repeatedly held that there is no violation of a fundamental California policy. *See Markos v. Sears, Roebuck & Co.*, 2005 WL 8155228, at *3 (C.D. Cal. Oct. 4, 2005) (no fundamental policy

conflict where chosen state's law would provide plaintiff with "equivalent" claim). It makes no difference that Georgia's and California's wiretap law may differ in some respects. "Courts should not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under" the opposing state's law. *Palomino v. Facebook, Inc.*, 2017 WL 76901, at *4 (N.D. Cal. Jan. 9, 2017); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018) (similar).

Accordingly, because California's wiretap law does not apply, Plaintiffs' wiretap claim must be dismissed. *See, e.g.*, *Heinz v. Amazon.com Inc.*, 2024 WL 2091108 (W.D. Wash. May 8, 2024) (dismissing CIPA claim based on Washington choice-of-law provision in terms of use).

**b) Plaintiffs Fail to State a Claim Under CIPA.**

Even if California law applied, Plaintiffs' failure to state a claim under CIPA would warrant dismissal. Section 631 prohibits (1) "intentional wiretapping," and (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 191 n.1, 192 (1978); *see* Cal. Penal Code § 631(a).[6] Plaintiffs do not—and cannot—pursue a claim under the first clause because "[t]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1065 n.8 (C.D. Cal. 2023) (collecting cases). Plaintiffs instead pursue an aiding-and-abetting

[6] The only other actionable clause of the subdivision prohibits "attempt[s] to use or communicate information obtained as a result of" activities under the first two clauses. *Tavernetti*, 22 Cal. 3d at 192–93; *see* Cal. Penal Code § 631(a). A claim brought under this clause must be predicated on a violation of the other clauses. As explained in the text, Plaintiffs have failed to state such a predicate violation, so the derivative "use or communicate" claim also fails. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (dismissing claim under clause imposing derivative liability for use of unlawfully obtained information where there was no predicate violation).

claim under the theory that Facebook violated the second clause (*see* Compl. ¶¶ 127, 130–133), which fails for multiple reasons discussed below.

***Plaintiffs Consented to the Alleged Data Practices.*** "[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019); Cal. Penal Code § 631(a) (prohibiting conduct that is "unauthorized," done "without the consent of all parties to the communication, or in any unauthorized manner").

Plaintiffs cannot state a claim under section 631 because they fail to plead facts supporting their conclusory allegation that they "did not consent." Compl. ¶ 135. To the contrary, Plaintiffs repeatedly consented to the challenged data practices via (1) Delta's Contract of Carriage, (2) Delta's pop-up consent banner, and (3) Facebook's Terms of Service.

First, Delta's Contract of Carriage (and incorporated Privacy Policy) "to which Plaintiffs . . . agreed" (*id.* ¶ 3) discloses the precise data practices that Plaintiffs now challenge: that Delta engaged "Facebook" to "track and analyze your usage of our Website" through use of Facebook's "pixel tags" to "target and re-target visitors to our Website." *Supra* at pp. 14–15. A "reasonable user who viewed the [privacy] disclosures [would] have understood that [Facebook] was collecting" the exact type of information allegedly collected here. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014) (dismissing wiretap claims based on website operator's disclosure of alleged data collection practices); *see also, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953–56 (N.D. Cal. 2017) (dismissing CIPA claim for failure to allege lack of consent based on plaintiff's agreement to website policies disclosing challenged data practices), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (dismissing CIPA claim for failure to allege lack of consent "given the express provisions of the Privacy Policy" disclosing challenged data practices).

Second, when Plaintiffs visited Delta's website, they were also immediately presented with Delta's pop-up consent banner.[7] Although the pop-up consent banner has varied slightly over time, it has always disclosed Delta's data collection practices: during Plaintiffs' alleged visits before August 2023 (*see* Compl. ¶¶ 17, 23), they were presented with a banner disclosing, "By continuing to browse, you consent to our use of cookies. To know more please refer to our **Cookie and Privacy Policies**." Verdin Decl. Ex. 7. Plaintiff Fudge was presented with an updated banner during her subsequent alleged visits (*see* Compl. ¶ 17) disclosing, "Delta and third parties collect data as necessary to provide this website and for enhanced functionality, analytics, and marketing, as outlined in Delta's **Privacy Policy**," with a box, "I UNDERSTAND." Verdin Decl. Ex. 8. These banners, which also linked to Delta's Privacy Policy providing additional disclosures (*supra* at pp. 14– 15), further undermine Plaintiffs' claim that they did not consent. *See Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *7 (Fla. Cir. Ct. June 17, 2021) (dismissing Florida wiretap claim where a pop-up warned that "by continuing to use the Website, Plaintiff acknowledges the use of cookies").

Finally, at the time of Plaintiffs' alleged visits, Plaintiffs "were registered Facebook users" with "active Facebook account[s]" (Compl. ¶¶ 19, 25, 102), which are "governed by [Facebook's] Terms of Service . . . to which all users must agree to create a Facebook

---

[7] The Court may consider Delta's pop-up consent banner in effect at the time of Plaintiffs' alleged visits to Delta's website (*see* Verdin Decl. Exs. 7 & 8) under the incorporation-by-reference doctrine because Delta's website and its contents are integral to Plaintiffs' claims, including their allegation that they "did not consent" (Compl. ¶ 135) to the alleged data practices. *See, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 2020 WL 7664461, at *3–4 (N.D. Cal. Dec. 24, 2020) (courts "routinely consider" the full contents of webpages to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *Garcia*, 78 F. Supp. 3d at 1136 (considering privacy policy that "contradict[ed] Plaintiff's claim that he was unaware of" the disclosure of personal information to third parties).

account." *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *1 (N.D. Cal. Oct. 3, 2022). As another California court has already recognized, these Terms of Service "incorporate [Facebook's] Data Policy" disclosing to Facebook users like Plaintiffs the same conduct alleged here: that Facebook "partners" like Delta "provide information" to Facebook "about your activities," including "information about . . . purchases" like Plaintiffs' flight purchases. *Id.* at *4, 10 (dismissing privacy claims based on disclosures in Facebook's Data Policy).

Accordingly, Plaintiffs' conclusory allegation that they did not consent to the challenged practices is contradicted by the Complaint's own allegations and materials incorporated by reference confirming that they did. This is fatal to their CIPA claim.

***Plaintiffs' Communications Were Not Intercepted.*** Plaintiffs fail to plausibly allege that Facebook attempts to learn the "contents" of any communication while "in transit," as required to state a claim. Cal. Penal Code § 631(a). When Plaintiffs entered their booking information on Delta's website, they allege that (1) Plaintiffs' browser "sends a GET request" with that information "to Defendant's server"; (2) Facebook's "embedded code" on Delta's server then "sends . . . instructions back to [Plaintiffs'] browser"; and (3) those instructions "cause[] the browser to" "duplicate" and "transmit[]" the booking information "to Facebook's servers." Compl. ¶ 47. Analyzing virtually identical allegations in a Facebook pixel case filed by the same plaintiffs' lawyers, a California court held that the plaintiffs there failed to allege that the defendant website operator "attempted to learn of the information while in transit," because "the duplication and sending of Facebook's secret code happens after the requests reaches its destination ([Defendant's] server)." *Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Super. Jan. 05, 2023). The same reasoning applies equally here.

The booking information Facebook allegedly collected also does not amount to "contents" of a communication within the meaning of CIPA. "[C]ontents refers to the intended message conveyed by the communication, and does not include record

information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiffs allege that Facebook collected a literal record of their flight purchase after they "complete[d] the booking": their "departure date, departure airport, arrival date, arrival airport, travel class, number of travelers, loyalty status, language, and currency used." Compl. ¶¶ 57, 139. "[N]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021). A record of Plaintiffs' purchase transaction is just that: record information. *Id.* at 1077 (dismissing CIPA section 631 claim for failure to plead "contents," where a third-party tool collected the plaintiff's information from a "purchase from Lululemon's website," including "shipping and billing information"). Although Facebook also allegedly collected Plaintiffs' "Facebook ID" (Compl. ¶ 139), the Ninth Circuit has squarely held that a "user's Facebook ID . . . does not meet the definition of 'contents.'" *Zynga Priv. Litig.*, 750 F.3d at 1107.[8]

**c) Plaintiff Mansoori's CIPA Claim Should Be Dismissed As Untimely.**

Because Plaintiff Mansoori alleges that she visited Delta's website on a single occasion in February 2022 (Compl. ¶ 23), her claim falls outside CIPA's one-year

[8] To the extent Plaintiffs' claim is also premised on Delta's alleged use of Facebook's "Conversions API tool" (Compl. ¶ 12), the claim is barred under section 631's party exception, which "exempt[s] from liability [a] person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Plaintiffs admit that Delta was a party to their communications, Compl. ¶¶ 18, 24 (alleging interception of Plaintiffs' "communications with Defendant"), and the party exception therefore bars any claim premised on Delta's use of the Conversions API to "record" such communications "on Defendant's" own "servers," *id.* ¶¶ 12, 59. *See, e.g.*, *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (dismissing section 631 claim to the extent premised on website operator's own recording of plaintiff's communications).

limitations period. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. 2021). Attempting to expand the limitations period, the Complaint alleges that the applicable limitations periods have been "tolled by the delayed discovery doctrine" because Plaintiffs "could not have reasonably discovered" the conduct at issue. Compl. ¶¶ 97–100. These allegations are demonstrably implausible. Plaintiff Mansoori could have discovered the complained-of data practices via Delta's Contract of Carriage (and incorporated Privacy Policy), Delta's cookie banners, and Facebook's Terms of Service. *See supra* at pp. 14–15. She thus had more than a "reasonable opportunity" to discover the complained-of data practices, and nothing more is required to start the running of the statute of limitations. *See Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1149 (9th Cir. 2020); *see also Maddalena v. Toole*, 2013 WL 5491869, at *5 (C.D. Cal. Oct. 1, 2013) (noting that "[a] victim of wiretapping does not need to discover every type and means of the defendant's misconduct" to trigger statute of limitations).

**D. Plaintiffs Lack Standing to Seek Injunctive Relief.**

Plaintiffs seek injunctive relief under their CIPA claim but lack Article III standing to seek that relief. *See* Compl. ¶ 145. They claim to be harmed by Facebook's interception of their data "without . . . consent." *Id.* ¶ 141; *see id.* ¶ 130. Plaintiffs do not—and cannot—allege "a sufficient likelihood that [they] will again be wronged in a similar way," as required for standing to pursue injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). They indisputably now are aware of Delta's alleged use of the Facebook pixel tool (as evidenced by their filing of this suit) and any future use of the website in light of this knowledge will constitute consent to the use of that tool. Accordingly, Plaintiffs lack standing to pursue injunctive relief. *See Jones v. Peloton Interactive, Inc.*, 2024 WL 1123237, at *8 (S.D. Cal. Mar. 12, 2024) (dismissing injunctive relief claim for lack of Article III standing in website data collection case because plaintiff "now has notice of Defendants' use of" the website tool and her future use of the website "would constitute

consent"); *In re: BPS Direct, LLC, & Cabela's, LLC, Wiretapping Litig.*, 2023 WL 8458245, at *20–21 (E.D. Pa. Dec. 5, 2023) (similar).

## IV. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed without leave to amend for lack of personal jurisdiction, as preempted by the ADA, or for failure to state a claim.

Dated: July 11, 2024

COVINGTON & BURLING LLP

By: <u>*/s/ Emily Johnson Henn*</u>

EMILY JOHNSON HENN (SBN 269482)
KATHRYN E. CAHOY (SBN 298777)
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

MATTHEW Q. VERDIN (SBN 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: mverdin@cov.com

*Attorneys for Defendant Delta Air Lines, Inc.*