EMILY JOHNSON HENN (SBN 269482)
KATHRYN E. CAHOY (SBN 298777)
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

MATTHEW Q. VERDIN (SBN 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: mverdin@cov.com

*Attorneys for Defendant Delta Air Lines, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

ETERNADA FUDGE and REYHANEH MANSOORI, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DELTA AIR LINES, INC.,

Defendant.

Case No. 2:24-cv-04531-HDV-SSC

**DEFENDANT DELTA AIR LINES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Hearing Date: September 19, 2024
Time: 10:00 a.m.
Judge: Hon. Hernán D. Vera
Courtroom: 5B

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1
II. ARGUMENT .......... 1
A. Plaintiffs Cannot Elide the Broad Preemption Clause of the ADA .......... 1
B. Plaintiffs Cannot Create Personal Jurisdiction Over Delta with Inconsistent Admissions .......... 4
C. Plaintiffs Fail to Allege a Single Contract Term Breached by Delta .......... 5
D. The CIPA Claim Should Be Dismissed .......... 7
1. The Georgia Choice-of-Law Provision Precludes the CIPA Claim .......... 7
2. Even Under California Law, Plaintiffs Fail to State a CIPA Claim .......... 8
E. Plaintiffs Lack Standing to Seek Injunctive Relief .......... 10
III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995) ........ 4

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Jan. 05, 2023) ........ 9

*Blueshift, Inc. v. Advanced Computing Techs., Inc.*,
273 Ga. App. 802 (2005) ........ 6

*Brooks v. Branch Banking & Tr. Co.*,
107 F. Supp. 3d 1290 (N.D. Ga. 2015) ........ 6

*Charas v. Trans World Airlines, Inc.*,
160 F.3d 1259 (9th Cir. 1998) ........ 2

*Cody v. SoulCycle Inc.*,
2016 WL 4771392 (C.D. Cal. Jan. 11, 2016) ........ 8

*D'Angelo v. FCA US, LLC*,
2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ........ 10

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ........ 10

*Daghaly v. Bloomingdales.com, LLC*,
2023 WL 6538382 (S.D. Cal. Oct. 6, 2023) ........ 5

*Emmett v. Delta Air Lines, Inc.*,
2024 WL 2816502 (W.D. Pa. June 3, 2024) ........ 4

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 9

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 8

*HAAC Chile, S.A. v. Bland Farms, LLC*,
2008 WL 3925285 (S.D. Ga. Aug. 26, 2008) ........ 6

*People ex rel. Harris v. Delta Air Lines, Inc.*,
247 Cal. App. 4th 884 (2016) ....................................................................3

*Heiting v. Marriott Int'l, Inc.*,
2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) ....................................................5

*Hulsey v. Peddle, LLC*,
2017 WL 8180583 (C.D. Cal. Oct. 23, 2017) ....................................................9

*Jones v. Peloton Interactive, Inc.*,
2024 WL 1123237 (S.D. Cal. Mar. 12, 2024) ....................................................10

*Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*,
2018 WL 4468320 (N.D. Cal. Sept. 18, 2018)....................................................3

*Kislov v. Am. Airlines, Inc.*,
2022 WL 846840 (N.D. Ill. Mar. 22, 2022) ....................................................2, 3

*Knight Indus., Inc. v. Turner Mktg., Inc.*,
157 Ga. App. 177 (1981) ....................................................................6

*Kwok v. Delta Air Lines Inc.*,
578 F. App'x 898 (11th Cir. 2014)....................................................................7

*Lilley v. Inalfa Roof Sys., Inc.*,
2016 WL 4697360 (N.D. Ga. July 18, 2016) ....................................................6

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) ....................................................................9

*Markos v. Sears, Roebuck & Co.*,
2005 WL 8155228 (C.D. Cal. Oct. 4, 2005) ....................................................8

*McGarry v. Delta Air Lines, Inc.*,
2019 WL 1885613 (C.D. Cal. Apr. 16, 2019) ....................................................2, 3

*McGarry v. Delta Air Lines, Inc.*,
2019 WL 2558199 (C.D. Cal. June 18, 2019)....................................................2

*McGarry v. Delta Air Lines, Inc.*,
812 F. App'x 625 (9th Cir. 2020) ....................................................................2

*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 (N.D. Cal. Dec. 22, 2022)....................................................9

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ........ 4

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
813 F.3d 718 (9th Cir. 2016) ........ 2

*Nedlloyd Lines B.V. v. Super. Ct.*,
3 Cal. 4th 459 (1992) ........ 7

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) ........ 9

*Palomino v. Facebook, Inc.*,
2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ........ 8

*Pica v. Delta Air Lines, Inc.*,
2019 WL 1598761 (C.D. Cal. Feb. 14, 2019) ........ 2, 3, 4

*Pica v. Delta Air Lines, Inc.*,
812 F. App'x 591 (9th Cir. 2020) ........ 2

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 9

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 10

*Salesforce.com, Inc. v. GEA, Inc.*,
2021 WL 9860787 (N.D. Cal. Feb. 2, 2021) ........ 8

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) ........ 9

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 5

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 10

**Statutes**

49 U.S.C. § 41712 ........ 4

Cal. Penal Code § 631(a) ........ 8

# I. INTRODUCTION

Plaintiffs' opposition (ECF No. 13) creates an untenable dilemma. If their claims challenging Delta's handling of passenger information entered online relate to Delta's services, then those claims are expressly preempted by the Airline Deregulation Act ("ADA"). If their claims do not relate to airline services, then this Court lacks personal jurisdiction over Delta because the sole conduct allegedly connected to California is Delta's globally accessible website. Plaintiffs try to have it both ways. As to jurisdiction, Plaintiffs argue that their claims relate to airline services. But as to preemption, Plaintiffs argue that selling tickets online cannot possibly relate to airline services because that would immunize Delta from privacy claims like Plaintiffs'. Neither argument has merit.

Plaintiffs' responses to Delta's other arguments fare no better. Plaintiffs concede they agreed to the Contract of Carriage (and incorporated Privacy Policy), which authorizes Delta to use the Facebook pixel tool so that Facebook (on behalf of Delta) can deliver targeted advertisements to Plaintiffs' Facebook accounts. Plaintiffs do not and cannot point to any provision in the Contract of Carriage that was allegedly breached. Plaintiffs' agreement to the precise data practices they challenge requires dismissal of their claims. For these and other reasons discussed below, the Court should dismiss Plaintiffs' claims.

# II. ARGUMENT

## A. Plaintiffs Cannot Elide the ADA's Broad Preemption Clause

The ADA preempts Plaintiffs' claims because, by Plaintiffs' own admission, their claims are "related[]" to Delta's services. ECF No. 13 at 16 (ECF pagination); *id.* at 12 ("Plaintiffs' breach of contract claim relates to Delta's . . . flights departing from California"); *id.* at 13 (Plaintiffs' claims "arise out of" "Delta's contracting with California customers" to purchase air travel on Delta's website); *id.* at 14 (describing allegedly collected information as "relating to" "travel out of a Delta hub"); *id.* (describing claims as relating to "services" including "offering flights for sale through the website"); *id.* at 16 (arguing "relatedness" between claims and data collection on Delta's website "by which Defendant sells the service of transporting travelers to and from various airports").

Despite these admissions, Plaintiffs contend that a finding of preemption here is "irreconcilable with binding Ninth Circuit precedent" (*id.* at 11), without explaining how. The Ninth Circuit (in a case cited by Plaintiffs) held that the broad scope of the ADA preempts claims that are "connected to 'services,' *i.e.*, access to flights." *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 728 (9th Cir. 2016). While the Ninth Circuit in that case did not address claims challenging the operation of globally accessible airline websites, "courts in the Ninth Circuit" have applied this definition to "h[o]ld preempted claims" like Plaintiffs "concerning [Delta's] handling of customer data collected when plaintiffs made reservations or purchased tickets" on Delta's website. *Kislov v. Am. Airlines, Inc.*, 2022 WL 846840, at *3, 4 n.1 (N.D. Ill. Mar. 22, 2022) (collecting cases). That is because such claims "directly relate to [Delta's] primary services, the purchase and sales of air transportation services." *McGarry v. Delta Air Lines, Inc.*, 2019 WL 1885613, at *5 (C.D. Cal. Apr. 16, 2019) (*McGarry I*); *see also McGarry v. Delta Air Lines, Inc.*, 2019 WL 2558199, at *4 (C.D. Cal. June 18, 2019) (*McGarry II*) (similar); *Pica v. Delta Air Lines, Inc.*, 2019 WL 1598761, at *2, 4–6 (C.D. Cal. Feb. 14, 2019) (similar).

Acknowledging the force of this logic, the Ninth Circuit affirmed the finding of ADA preemption in this trio of Delta cases because they "correctly articulate and apply the law." *McGarry v. Delta Air Lines, Inc.*, 812 F. App'x 625, 626 (9th Cir. 2020) (affirming dismissal in both *McGarry I* and *McGarry II*); *see Pica v. Delta Air Lines, Inc.*, 812 F. App'x 591, 593 (9th Cir. 2020) (affirming dismissal in *Pica*, including because the ADA "preempts Plaintiffs' three state-law claims"). Contrary to Plaintiffs' argument, Delta's website booking services are not an "amenity" akin to "in-flight beverages" at issue in *Charas* or the "automated airport kiosks" in *National Federation of the Blind*, which assisted passengers with certain limited tasks—specifically, "accessing flight information, checking in for flights, printing boarding passes, checking baggage, and selecting and upgrading seats." 813 F.3d at 723 (discussing *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998)). As Plaintiffs admit, Delta's website is a "critical part" of its business that actually "sells the service of transporting travelers." ECF No. 13 at 16.

Consistent with Ninth Circuit law, other courts have similarly held that the ADA preempts claims concerning an airline's handling of customer information collected when booking travel online. ECF No. 12 at 20 (collecting cases). In the face of this overwhelming authority, which Plaintiffs all but ignore,[1] Plaintiffs argue that their claims are "unrelated" to "air travel" after all. ECF No. 13 at 18. But this argument cannot be accepted as true given Plaintiffs' multiple admissions that their claims "relate[] to Delta's . . . flights departing from California." *Id.* at 12. Insofar as Plaintiffs are arguing that Delta's alleged use of the Facebook pixel to "capture" "personal information" during the online booking process is unrelated to a Delta service (*see id.* at 18), that argument is refuted by Plaintiffs' own allegation that Delta uses the tool to "advertis[e] its services." ECF No. 1 ¶ 65. Even if that were not the case, Plaintiffs "cannot characterize their privacy claims as relating only to [Delta's] unlawful handling of their personal data, where that data was collected in the course of (and in furtherance of) [Delta's] provision of services." *Kislov*, 2022 WL 846840, at *3 (relying on *Pica* and *McGarry* to reject similar argument as to claims alleging use of software tool to collect personal information during booking process).

Plaintiffs also remark that allowing claims like Plaintiffs' to proceed "will have no effect on Delta's services or prices" (ECF No. 13 at 17), but offer no response to Delta's arguments to the contrary. ECF No. 12 at 21. As Plaintiffs acknowledge, Delta allegedly uses the Facebook pixel tool during the online booking process "for marketing on Facebook" and "sales efforts" of flights. ECF No. 13 at 18. Allowing claims like Plaintiffs'

---

[1] Plaintiffs attempt to distinguish *People ex rel. Harris v. Delta Air Lines, Inc.*, but the effort falls flat. The California Court of Appeal did not apply any "definition of service," let alone one "inconsistent with Ninth Circuit precedent" (ECF No. 13 at 19–20). *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 901 & n.13 (2016) ("the issue before us is not whether the Fly Delta application is a 'service,' but whether it 'relates to' Delta's services," and "it is clear, beyond cavil" that it does); *see* ECF No. 13 at 19 (relying on *Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*, 2018 WL 4468320, at *2 (N.D. Cal. Sept. 18, 2018) (mischaracterizing *Harris* as addressing "service" definition)).

to proceed that seek to enjoin or modify this alleged conduct "would have a significant impact upon [Delta's] ability to market [its] product, and hence a significant impact upon the fares they charge" as well. *Morales v. Trans World Air Lines*, 504 U.S. 374, 390 (1992). Claims that seek to "police [Delta's] marketing practices" directly contravene "the ADA's purpose to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995).[2]

In sum, this Court should follow the unanimous consensus among courts that the ADA preempts claims like Plaintiffs' concerning airlines' handling of customer information collected while booking travel online. A finding of preemption under these facts would not, as Plaintiffs suggest, result in "a wholesale grant of immunity from any state law cause of action." ECF No. 13 at 17. Courts have allowed state law claims to proceed in other circumstances, for example, when a plaintiff did not allege that any information was collected while booking travel on Delta's website. *Emmett v. Delta Air Lines, Inc.*, 2024 WL 2816502, at *1 (W.D. Pa. June 3, 2024) (alleging a plaintiff "visited" Delta's website and that "some of his" unspecified "actions" were recorded using "session replay" tool); *see also* 49 U.S.C. § 41712 (authorizing DOT to investigate and prohibit unfair and deceptive practices in the sale of aviation tickets). Regardless, because Plaintiffs concede their claims "relate to" Delta's services, ADA's broad preemption clause applies.

**B. Plaintiffs Cannot Create Personal Jurisdiction Over Delta with Inconsistent Admissions**

When it comes to personal jurisdiction, Plaintiffs shift their position and argue that Delta is subject to specific personal jurisdiction in California because their claims are "related to" Delta's services—namely, "flights" Plaintiffs allegedly purchased on Delta's

---

[2] Plaintiffs invoke the narrow *Wolens* exception for claims arising out of an airline's "self-imposed undertakings" (ECF No. 13 at 20) to salvage their breach of contract claims. But as discussed below, *infra* at 6, that exception to preemption would arise if Delta breached some voluntary undertaking and not where, as here, Plaintiffs seek to rewrite the Contract of Carriage. *Pica*, 2019 WL 1598761, at *5 (ADA preempted contract claim attempting "to read into the Contract of Carriage additional obligations").

website "departing from California." ECF No. 13 at 12; *but see id.* at 16–20 (arguing claims are not related to Delta's services). Plaintiffs cannot have it both ways: their claims are either related to Delta's services or they are not. If this Court were to find Plaintiffs' claims are not preempted, and thus not "related to" Delta's services, then it follows that Delta is not subject to personal jurisdiction in California on Plaintiffs' claims.[3]

Although Plaintiffs also argue that their claims "relate to" other activities in California, none establish jurisdiction. Courts require that the relationship between the defendant and the forum "arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Plaintiffs cannot establish jurisdiction based on arguments that Plaintiffs chose to access Delta's website "in California" (ECF No. 13 at 13) or that Facebook is "a California-based company" (*id.*). *Daghaly v. Bloomingdales.com, LLC*, 2023 WL 6538382, at *3 (S.D. Cal. Oct. 6, 2023) (rejecting same arguments in Facebook pixel CIPA case as insufficient); *Heiting v. Marriott Int'l, Inc.*, 2024 WL 3751276, at *4 (C.D. Cal. Aug. 5, 2024) (similar in CIPA case).

### C. Plaintiffs Fail to Allege a Single Contract Term Breached by Delta

Plaintiffs do not dispute that the Contract of Carriage's incorporated Privacy Policy expressly authorizes Delta to share Plaintiffs' booking information with Facebook to deliver targeted advertisements on Plaintiffs' Facebook accounts. ECF No. 12 at 23. Plaintiffs' opposition argues only that Delta cannot do so "in a non-anonymized, disaggregated fashion" (ECF No. 13 at 21), but they cannot maintain a contract claim on this theory.

Plaintiffs fail to satisfy the basic pleading requirement to identify any contract provision in the Contract of Carriage allegedly breached. "[A] plaintiff asserting a breach

---

[3] Plaintiffs apparently agree that conclusory allegations about Delta conducting business in California are insufficient (ECF No. 12 at 15), because they now submit evidence to establish that their claims are, in fact, related to Delta's services. ECF No. 13-1, Exs. A–B.

of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015). Plaintiffs argue that Delta "expressly stated" in the incorporated Privacy Policy that Delta "may share customer personal data only in an 'anonymous, aggregated' manner," but that language does not appear in the Privacy Policy. ECF No. 13 at 22 (citing ECF No. 1 ¶¶ 113–118 (quoting portions of the Privacy Policy, none of which contain this language)). Because Plaintiffs do not identify any contractual provision Delta breached, their contract claim should be dismissed on this basis alone. *Brooks*, 107 F. Supp. 3d at 1296 (dismissing contract claim for this reason).

Unable to point to any contractual provision allegedly breached, Plaintiffs next argue that "[t]he effect" of the parties' contract is an "agreement to share Plaintiffs['] . . . personal information only . . . in an anonymized and disaggregated fashion." ECF No. 13 at 10. This argument is foreclosed by the black-letter principle of contract law that "[c]ourts will not read non-existent requirements into the contract just to create an ambiguity." *HAAC Chile, S.A. v. Bland Farms, LLC*, 2008 WL 3925285, at *13 (S.D. Ga. Aug. 26, 2008). The Privacy Policy expressly authorizes Delta to use "cookies," including "pixel tags," "used by . . . Facebook . . . to target and re-target visitors to our Website" like Plaintiffs "with digital advertising." Verdin Decl. Exs. 1–3 §§ 6.1, 6.2. Plaintiffs do not point to any provision limiting or requiring that Delta do so "only . . . in an anonymized and disaggregated fashion." ECF No. 13 at 10. "There can be no breach where," as here, "a party to a contract has done what the provisions of the contract expressly give him the right to do." *Knight Indus., Inc. v. Turner Mktg., Inc.*, 157 Ga. App. 177, 178 (1981)).

Since the contractual language authorizing Delta to engage in the complained-of conduct is "not ambiguous," the "rules of contract construction" Plaintiffs invoke (ECF No. 13 at 20–22) "may not be applied." *Blueshift, Inc. v. Advanced Computing Techs., Inc.*, 273 Ga. App. 802, 805 (2005); *see Lilley v. Inalfa Roof Sys., Inc.*, 2016 WL 4697360, at *4–5 (N.D. Ga. July 18, 2016) (declining to apply rule that "contract of adhesion" is construed against the drafter because "no ambiguity exists in the terms"). Even if the

contract were ambiguous (and it is not), Plaintiffs' argument is that the "general" representation that Delta "may share with third parties anonymous, aggregated information about all our users" (Verdin Decl. Exs. 1–3 § 7.1) means that Delta cannot share other information "unless expressly stated." ECF No. 13 at 10. But the Privacy Policy does precisely that: Delta "may disclose your information we collect or receive," including "information related to a flight booking," to those "providing services to Delta" like Facebook. Verdin Decl. Exs. 1–3 §§ 4.1, 7.1.

Plaintiffs' reading of the contract also runs afoul of the "absurd result" doctrine, under which "a court must construe a contract so as to achieve a logical result." *Kwok v. Delta Air Lines Inc.*, 578 F. App'x 898, 902 (11th Cir. 2014) (Georgia law). Here, Plaintiffs do not dispute that Delta is contractually authorized to use the Facebook pixel tool so that Facebook (on behalf of Delta) can deliver targeted advertisements to Plaintiffs' Facebook accounts. Yet this contractual right would be rendered meaningless if Delta cannot share booking information with Facebook in a manner that is "linked to the customer's Facebook profile via their Facebook ID"—the only "personally identifiable" information allegedly shared with Facebook. ECF No. 13 at 10, 28. Nor do Plaintiffs explain, let alone allege, how advertisements could be delivered to Plaintiffs' Facebook accounts using "anonymous account identifiers." *Id.* at 27. In other words, Plaintiffs' reading, if adopted, would contradict Delta's contractual rights and Georgia courts "reject a construction that leads to a contradiction." *Kwok*, 578 F. App'x at 902.

### D. The CIPA Claim Should Be Dismissed

#### 1. The Georgia Choice-of-Law Provision Precludes the CIPA Claim

The parties agree that Plaintiffs' wiretap claim falls within the scope of the Contract of Carriage's Georgia choice-of-law provision. Plaintiffs seek to overcome California's "strong policy favoring enforcement" of this provision by invoking a narrow exception for laws "contrary to a *fundamental* policy of California." *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 465 (1992). But that exception does not apply because Plaintiffs admit that Georgia, like California, provides a wiretap claim (ECF No. 13 at 24) and a "selected state's

law is not contrary to a fundamental policy of the forum state" when it provides an "equivalent" claim. *Markos v. Sears, Roebuck & Co.*, 2005 WL 8155228, at *3 (C.D. Cal. Oct. 4, 2005). Plaintiffs suggest that the result of litigating under Georgia law may be different (ECF No. 13 at 25), but the Court "should not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under" California law. *Palomino v. Facebook, Inc.*, 2017 WL 76901, at *4 (N.D. Cal. Jan. 9, 2017).

Plaintiffs' contrary arguments primarily rely on "inapplicable" cases applying the "governmental interest" test in situations "where, unlike here, the parties did *not* have an agreement as to the applicable law." *Salesforce.com, Inc. v. GEA, Inc.*, 2021 WL 9860787, at *5 & n.1 (N.D. Cal. Feb. 2, 2021) (finding such cases insufficient to establish a contrary fundamental California policy); *see* ECF No. 13 at 24 (citing *Ades*, *Erceg*, and *Kearney*). Plaintiffs' argument that "such a waiver of California law is unenforceable" is similarly unavailing because they rely on cases involving other statutes that, unlike CIPA, contain express anti-waiver provisions. *Id.* at 25 (citing, for example, *Cody v. SoulCycle Inc.*, 2016 WL 4771392, at *8 (C.D. Cal. Jan. 11, 2016) (statute provided that "[a]ny waiver of [this provision] is contrary to public policy")).

### 2. Even Under California Law, Plaintiffs Fail to State a CIPA Claim

Even if California law applies, Plaintiffs fail to state a CIPA claim. Plaintiffs assert an aiding-and-abetting claim under the theory that Facebook purportedly committed a predicate interception under CIPA section 631's second clause. But they fail to plausibly allege that Facebook (1) learned the "contents" of Plaintiffs' communications while "in transit," and (2) did so "without . . . consent." Cal. Penal Code § 631(a).

***Plaintiffs Consented to the Alleged Data Practices.*** Plaintiffs dispute that lack of consent is an element of their claim, but the case they cite confirms that, "under California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020). This is fatal to Plaintiffs' arguments, which rely on the false premise that consent is an "affirmative defense" that Delta "has the burden to establish" (ECF No. 13 at 26). Nor

can Plaintiffs satisfy their burden to plead a lack of consent. First, the Contract of Carriage, unlike the disclosures in Plaintiffs' cited cases (*Id.* at 26–29), contains unambiguous disclosures of the alleged data practices. *Supra* at 6. Second, Plaintiffs do not dispute that Delta's pop-up consent banner and Facebook's Terms of Service disclosed the alleged data practices as well. Contrary to Plaintiffs' argument, the Court may consider these documents because (1) both are "central to the plaintiff[s'] claim" that they did not consent, and (2) the pop-up consent banner appears on the full page of Delta's website that "the complaint refers to." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *e.g.*, *Hulsey v. Peddle, LLC*, 2017 WL 8180583, at *1 & n.1 (C.D. Cal. Oct. 23, 2017) (considering document that was "central to [plaintiff's] claim that she did not consent"); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 2020 WL 7664461, at *3–4 (N.D. Cal. Dec. 24, 2020) (considering "full page of a website . . . quoted or relied on in the complaint").

***Plaintiffs' Communications Were Not Intercepted.*** Another court held that a nearly identical complaint failed to allege that Facebook collected any communication while "in transit." *Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Super. Jan. 05, 2023). Contrary to Plaintiffs' argument, *Barbour* did not "reverse[] course" in a later decision (ECF No. 13 at 31 n.8); it "adhere[d] to its prior demurrer ruling" that the same conduct alleged here is "not an interception . . . while [data] is in transit." ECF No. 13-4 at 6. This requirement was later met based on new allegations that "two messages are *literally* generated and sent" to the website and Facebook "at the same time" (*id.* at 8), but Plaintiffs point to no such allegations here. ECF No. 13 at 31 (citing ECF No. 1 ¶¶ 48–59). In fact, Plaintiffs take the (flawed) position that the "in transit" requirement "is not a literal one" (*id.* at 31), based on decisions that do not analyze that requirement.[4]

---

[4] *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) ("acquisition" under federal Wiretap Act); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11 (N.D. Cal. Dec. 22, 2022) (same); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("party" exemption); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (same).

Nor does the allegedly collected record of Plaintiffs' flight purchase information constitute "contents." Another court held that similar purchase information entered on a website does not constitute "contents." *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (plaintiff's purchase information, including "shipping and billing information," was not "contents"). Plaintiffs ignore this decision and instead urge this Court to adopt a contrary rule that information is automatically "contents" when entered into "online forms," but the case they cite did not adopt this blanket rule. ECF No. 13 at 32 (citing *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) (explaining only that such information "may be 'contents'")).

***Plaintiff Mansoori's CIPA Claim Is Untimely.*** Plaintiff Mansoori invokes the delayed discovery rule, but that rule does not apply given the disclosures of the alleged conduct in the Contract of Carriage (and Privacy Policy), Delta's cookie banners, and Facebook's Terms of Service. ECF No. 12 at 31. When Delta states that it uses "pixel tags" used by advertisers like Facebook "to track and analyze your usage of our Website" in order "to target and re-target visitors to our Website . . . with digital advertising," there is nothing ambiguous and nothing further left to discover. *Supra* at 6.

### E. Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs lack Article III standing because they do not allege "false advertising," *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), or "ongoing use of their intercepted data," *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *7 (S.D. Cal. Mar. 28, 2024). Here, the purported wrong is the collection of Plaintiffs' data "without . . . consent." ECF No. 1 ¶ 141. Because Plaintiffs admit that they "are now aware of Delta's data sharing practices" (ECF No. 13 at 33), any future collections would be done with "consent." *Jones v. Peloton Interactive, Inc.*, 2024 WL 1123237, at *8 (S.D. Cal. Mar. 12, 2024) (no standing for this reason).

## III. CONCLUSION

The Complaint should be dismissed without leave to amend as preempted by the ADA, for lack of personal jurisdiction, or for failure to state a claim.

Dated: September 4, 2024

COVINGTON & BURLING LLP

By: /s/ Emily Johnson Henn
EMILY JOHNSON HENN (SBN 269482)
KATHRYN E. CAHOY (SBN 298777)
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

MATTHEW Q. VERDIN (SBN 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: mverdin@cov.com

*Attorneys for Defendant Delta Air Lines, Inc.*