JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETERNADA FUDGE and REYHANEH MANSOORI, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Case No. 2:24-cv-04531 HDV SSC<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12]** |

## I. INTRODUCTION

Plaintiffs Eternada Fudge and Reyhaneh Mansoori bring this putative class action against Defendant Delta Air Lines ("Delta") alleging Delta improperly disclosed consumers' personal information to Meta Platforms, Inc. ("Meta" or "Facebook") that it obtained when Plaintiffs booked airfare on Delta's website, www.delta.com. Complaint [Dkt. No. 1-1]. This, Plaintiffs argue, was a breach of Delta's Conditions of Carriage and Privacy Policy and a violation of the California Invasion of Privacy Act (CIPA). *Id.* at 24–28.

Delta moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6). Motion to Dismiss Plaintiffs' Complaint ("Motion") [Dkt. No. 12]. Delta challenges personal jurisdiction and further contends that the Airline Deregulation Act ("ADA") preempts Plaintiffs' claims.

For the reasons more fully discussed below, Delta's Motion is granted. The Court finds that specific jurisdiction does exist sufficient to maintain the action, but nevertheless concludes that Plaintiffs' claims are preempted by the ADA because the sale of airfare on Delta's website is "related to" Delta's air transportation "services."

## II. BACKGROUND

Consumers who book travel on Delta's website must first agree to Delta's Conditions of Carriage, which incorporates its Privacy Policy. Complaint ¶ 31. The Personal Data section of the Conditions of Carriage states the following:

> The passenger recognizes that personal data base been given to Carrier *for purposes of making a reservation for carriage*, obtaining ancillary services, facilitation immigration and entry requirements, and making available such data to government agencies. For these purposes, where required by law, the passenger authorizes Carrier to retain such data and to transmit to its own offices, other Carriers, or the providers of such services, in whatever country they may be located. All passenger information shall be handled in accordance with Delta's Privacy Policy.

*Id.* ¶ 32 (emphasis added). The Privacy Policy provides, "We do not sell your name or other personal information to third parties, and do not intend to do so in the future. . . . We may share with third parties anonymous, aggregated information about all our users." *Id.* ¶ 33. Plaintiffs allege that

despite these provisions, when a consumer enters personal information on the Delta website, that information is contemporaneously shared with Facebook. *Id.* ¶ 58. Such information includes the consumer's unique Facebook ID, departure date, departure airport, arrival date, arrival airport, travel class, number of travelers, loyalty status, language, and currency used. *Id.*

Plaintiffs bring this action on behalf of "[a]ll persons in the United States who, during the Class Period, provided their personal information to Delta using www.delta.com in connection with their purchase of airfare, were registered Facebook users, and had their personal information shared with Facebook" (the "Nationwide Class"), and also on behalf of "[a]ll persons in California who, during the Class Period, provided their personal information to Delta using www.delta.com in connection with their purchase of airfare, were registered Facebook users, and had their personal information shared with Facebook" (the "California Subclass"). *Id.* ¶ 102. Plaintiffs assert two claims for relief: (1) breach of contract, on behalf of the nationwide class, and (2) violation of CIPA, under Cal. Penal Code § 630, *et seq*, on behalf of the California Subclass. *Id.* ¶¶ 111–45.

## III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction over the claims presented. Under Rule 12(b)(1), a party may seek dismissal "either on the face of the pleadings or by presenting evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citation omitted). In resolving a facial attack on jurisdiction, the Court only considers the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, when a party asserts a factual challenge, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek to dismiss a complaint because the court lacks personal jurisdiction. The plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(2) without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Schwarzenegger v. Fred Martin Motor*

*Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("[W]e only consider whether the [plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction."). "[U]ncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800.

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## IV. DISCUSSION

### A. Personal Jurisdiction

Delta moves to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Motion at 4–9. Personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1145–55 (citation omitted). California authorizes jurisdiction on any basis consistent with federal due process requirements. Cal. Civ. Proc. Code. § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Plaintiffs argue that the Court has specific jurisdiction over Delta. Complaint ¶ 14. To establish specific jurisdiction, (1) the non-resident defendant must have purposefully directed its

activities to the forum state, (2) the claim must arise out of or relate to the defendant's forum related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *See Schwarzenegger*, 374 F.3d at 802 (citation omitted). When evaluating the first prong of the specific jurisdiction test, courts use "purposeful availment" for breach of contract claims and "purposeful direction" for claims sounding in tort, including CIPA claims. *Id.*; *Rodriguez v. Aquatic Sales Sols. LLC*, No. 2:23-CV-05198-CAS-EX, --- F. Supp. 3d ---, 2024 WL 2804097, at *8 (C.D. Cal. May 29, 2024). Delta contends that Plaintiffs (1) fail to adequately plead that their breach of contract claim "arises out of or relates to" Delta's activities in California, and (2) fail to establish the purposeful direction and relatedness requirements to sustain their CIPA claim. Motion at 5–9.

Here, the Complaint alleges that Delta regularly conducts business in California and that a substantial part of the events giving rise to Plaintiffs' claims occurred in the state. Complaint ¶ 14. Plaintiffs further allege that since they "used their devices within California," Delta "records and disseminates Plaintiffs' and Class Members' data, communications, and personal information in California." *Id.* ¶ 134. And, according to Plaintiffs, Delta *intentionally* installed the Facebook Tracking Pixel on its website "to surreptitiously duplicate and send its customers' personal information to Facebook . . . ."). *Id.* ¶ 2; *see also id.* ¶¶ 131, 133, 135. In alleging these facts, Plaintiffs make a sufficient prima facie showing to meet the specific jurisdiction requirements for both of their claims. *See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996) (noting that "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action" (citation omitted)); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (stating that purposeful availment is shown here a defendant" deliberately reached out beyond its home—by, for example, exploiting a market in the forum state." (citation omitted)); *Calder v. Jones*, 465 U.S. 783, 803 (1984) (outlining the "effects test," which considers whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state).

**B. Preemption**

Alternatively, Delta seeks to dismiss the Complaint on the ground that Plaintiffs' claims are preempted by the ADA. Motion at 9–13. Congress enacted the ADA in 1978 to "encourage, develop and attain an air transportation system which relies on competitive market forces to determine the quality, variety and price of air services." H.R. Conf. Rep. No. 95-1779, p. 53 (1978), U.S. Code Cong. & Admin. News 1978, 3737. The ADA provides that "no State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to* rates, routes, or services of any air carrier." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 238 (1995) (citing 49 U.S.C. § 1305(a)(1)) (emphasis added). A state law " relates to" airline services when it has a "connection with or reference to" them. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

The Supreme Court and the Ninth Circuit have provided critical guidance on how courts should interpret the term "services" in the context of ADA preemption. In *Northwest, Inc. v. Ginsberg*, for example, the Court found that an airline's frequent flyer program sufficiently "related to" its "services" because it was connected to "access to flights." 572 U.S. 273, 284 (2014). The Ninth Circuit in *Charas v. Trans World Airlines, Inc.*, reasoned that "'service,' when juxtaposed to 'rates' and 'routes,' refers to such things as the frequency and scheduling of transportation . . . ." 160 F.3d 1259, 1265–66 (9th Cir. 1998), *opinion amended on denial of reh'g*, 169 F.3d 594 (9th Cir. 1999)); *see also Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 726 (9th Cir. 2016) ("The term 'service' refer[s] to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." (quoting *Charas*, 160 F.3d at 1261)). At the same time, however, the term "services," in the context of the ADA, does not include an airline's provision of amenities, such as "in-flight beverages, personal assistance to passengers, [and] the handling of luggage . . . ." *Charas*, 160 F.3d at 1261.

Plaintiffs' allegations make apparent that their claims relate directly to Delta's air transportation services. The Complaint alleges Plaintiffs used Delta's website and provided Delta with their personal information "to reserve air travel." Complaint ¶¶ 17–23; *see also id.* ¶¶ 29–30 ("On the website, consumers input choices and make reservations *for air travel*. *In booking travel*

on the website, consumers are required to enter personal information . . . . ." (emphasis added)); ¶ 37 ("[W]hile consumers are filling out and submitting online forms with [their personal] information . . . , and purchasing air travel on the website, Defendant, without the consumers' knowledge or consent, supplies the private information to non-party Facebook."). Plaintiffs' claims stem from their purchase of air travel online, having provided their information specifically for the purpose of accessing the airline's air transportation services.

Delta's online booking feature is therefore more analogous to the frequent flyer program found sufficiently related to air transportation services in *Northwest*, which was connected directly to "access to flights," and unlike a mere amenity described in *Charas*. The connection between Plaintiffs' claims and Delta's services is clear. *See McGarry v. Delta Air Lines, Inc.*, No. CV 18-9827-MWF (EX), 2019 WL 1885613, at *5 (C.D. Cal. Apr. 16, 2019) (finding that the plaintiff's claims that Delta negligently handled customer data "directly relate to [Delta's] primary services, the purchase and sales of air transportation services"); *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 901 (Ct. App. 2016) (concluding that the claims alleging Delta's mobile application violated the Online Privacy Protection Act "relate to" Delta's services because the application "may be used to check-in online for an airplane flight, view reservations for air travel, rebook cancelled or missed flights, pay for checked baggage, track checked baggage, [and] access a user's frequent flyer account."). The Court finds that Plaintiffs' claims are necessarily preempted by the ADA. *Cf. Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2019 WL 1598761, at *5 (C.D. Cal. Feb. 14, 2019) (noting that the plaintiffs' claims concerning violation of their privacy rights due to Delta's alleged improper transmission of their personal identifying information would be preempted by the ADA), *aff'd*, 812 F. App'x 591 (9th Cir. 2020).[1]

---

[1] Having found that Plaintiffs' claims are preempted by the ADA, the Court does not reach Delta's remaining arguments under Federal Rule of Civil Procedure 12(b)(6). *See* Motion at 13–24.

## V. CONCLUSION

For the reasons described above, Delta's Motion to Dismiss is granted.

Dated: October 4, 2024

Hernán D. Vera
United States District Judge