ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
JOHN J. NELSON (SBN 317598)
jnelson@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872.365.7060

ALEC H. SCHULTZ (*pro hac vice*)
**HILGERS GRABEN PLLC**
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Telephone: 305.630.8304
aschultz@hilgersgraben.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ETERNADA FUDGE and REYHANEH MANSOORI, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DELTA AIR LINES, INC.,

Defendant.

Case No. 2:24-cv-04531-HDV-SSC

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, RELIEF FROM JUDGMENT (DKT. 21)**

Date: December 12, 2024
Time: 10:00 a.m.
Judge: Hon. Hernán D. Vera
Courtroom: 5B

# TABLE OF CONTENTS


I. ARGUMENT.......................................................................................1

A. Reconsideration is Procedurally Appropriate. ....................................1

B. Plaintiffs' Breach of Contract Claim is Exempt from ADA Preemption..........................................................................................2

C. Plaintiffs' CIPA Claim is Not Preempted. .........................................4

II. CONCLUSION....................................................................................7

# TABLE OF AUTHORITIES

Page(s)

Cases

*Air Transport Ass'n v. Public Util. Comm'n*,
833 F.2d 200 (9th Cir. 1987) ..... 7

*Berrin v. Delta Air Lines, Inc*,
2024 WL 3304815 (C.D. Cal. Mar. 28, 2024) ..... 4, 5

*Binyomin Ginsberg v. Nw., Inc.*,
2009 WL 9523877 (S.D. Cal. July 8, 2009) ..... 3

*Castanares v. Deutsche Lufthansa AG*,
2020 WL 6018807 (C.D. Cal. Oct. 9, 2020) ..... 3

*Charas v. Trans World Airlines, Inc*.,
160 F.3d 1259 (9th Cir. 1998) ..... 5

*Copeland v. Home Grown Music, Inc*.,
358 Ga. App. 743 (2021) ..... 3

*Dilts v. Penske Logistics, LLC*,
769 F.3d 637 (9th Cir. 2014) ..... 4

*Fed. Exp. Corp. v. California Pub. Utilities Comm'n*,
936 F.2d 1075 (9th Cir. 1991) ..... 7

*Hickcox-Huffman v. US Airways, Inc*.,
855 F.3d 1057 (9th Cir. 2017) ..... 2

*Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*,
2018 WL 4468320 (N.D. Cal. Sept. 18, 2018) ..... 6

*McGarry v. Delta Air Lines, Inc*.,
2019 WL 1885613 (C.D. Cal. Apr. 16, 2019) ..... 5, 6

*Nat'l Fed'n of the Blind v. United Airlines Inc*.,
813 F.3d 718 (9th Cir. 2016) ..... 5, 6

*Pica v. Delta Air Lines, Inc*.,
2019 WL 1598761 (C.D. Cal. Feb. 14, 2019) ..... 3, 5

*Rowe v. New Hampshire Motor Transp. Ass'n*,
552 U.S. 364 (2008) ..... 4

*Sanchez v. Aerovias De Mexico, S.A. De C.V.*,
590 F.3d 1027 (9th Cir. 2010) ..... 3

*Thomas v. Petro-Canada Am. Lubricants, LLC*,

2023 WL 9687513 (C.D. Cal. Dec. 4, 2023) ........ 1, 2

*Yagman v. Kittay*,
2017 WL 6060603 (C.D. Cal. Apr. 18, 2017) ........ 1

Statutes

California Penal Code § 631(a) ........ 6

Rules

Fed. R. Civ. P. 60(b) ........ 1, 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. ARGUMENT.

Plaintiffs agree that reconsideration is an exceptional remedy and should be used sparingly. But this is one of the rare instances in which reconsideration is, respectfully, warranted. Mindful that the Court at this point has pages of briefing on the issues, Plaintiffs address Delta's key arguments below. Regarding any extraneous arguments left unaddressed in this reply, Plaintiffs rest on the briefing previously submitted.

### A. Reconsideration is Procedurally Appropriate.

Plaintiffs submit that the Order made mistakes of law and fact, and did not address controlling appellate precedent. These arguments fit within the rules of civil procedure.

As explained in the motion, Plaintiffs seek reconsideration under several procedural vehicles, including Rule 60(b). That rule authorizes relief from a final judgment for "mistake," "inadvertence," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). Mistake in this context includes, among other things, "mistake of law." *Thomas v. Petro-Canada Am. Lubricants, LLC*, No. EDCV211106JGBSPX, 2023 WL 9687513, at *4 (C.D. Cal. Dec. 4, 2023) ("One of the grounds in Rule 60(b) includes 'mistake,' which the Ninth Circuit has interpreted to include mistake of law."); *see also Yagman v. Kittay*, No. CV167343VAPAFMX, 2017 WL 6060603, at *3 (C.D. Cal. Apr. 18, 2017) ("Because the words 'mistake' and 'inadvertence' are not . . . limited, they may include mistake and inadvertence by the judge.").

A leading treatise on federal civil procedure in the Ninth Circuit explains that Local Rule 7-18 does not apply where, as here, Plaintiffs seek relief from a final judgment under Rule 60(b). "Although entitled 'motion for reconsideration,' a motion may seek relief available under some other rule—e.g., for relief from judgment under FRCP 60(b) . . . In such cases, the motion is not subject to local rules limiting motions for reconsideration." *Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions*, 12:160.7 (2024). Courts have agreed with this reading, too. *Yagman*, 2017 WL 6060603, at *3 ("As Local Rule 7-18 addresses only 'motion[s] for reconsideration,' it

does not apply to requests for relief from judgment under Rule 60(b)").

At minimum, the parties have a good faith disagreement regarding the parameters for reconsideration and Delta's accusation of "flagrant" local rule violations is unnecessary. Opp. at 4. In any event, Plaintiffs have not argued it is an abuse of discretion to deny reconsideration in favor of an appeal. Reconsideration is, of course, discretionary. Rather, Plaintiffs believe judicial economy and the interests of justice would be served by considering the arguments and issues raised in the motion and below.

### B. Plaintiffs' Breach of Contract Claim is Exempt from ADA Preemption.

It is true that Plaintiffs' Opposition to Motion to Dismiss raised the *Wolens* exception to preemption of contract claims. But as Delta acknowledges, the Order did not address that exception. Opp. at 4-5. Because the *Wolens* doctrine is at the core of the parties' preemption arguments, Plaintiffs respectfully believed the Order's omission was an oversight. *See Thomas v. Petro-Canada Am. Lubricants, LLC*, No. EDCV211106JGBSPX, 2023 WL 9687513, at *5-6 (C.D. Cal. Dec. 4, 2023) ("The Court did not analyze whether Aleem's alleged conduct as an officer would entitle Plaintiff to punitive damages. This was error.") (granting reconsideration).

If Plaintiffs plausibly allege Delta breached its Conditions of Carriage, that claim is not preempted. It makes no difference whether the breach relates to the service of an airline. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017) ("*Wolens* controls as to Hickcox-Huffman's breach of contract claim. If she adequately pleaded breach of contract, then her claim is not preempted."). Dismissing the contract claim as preempted without exception represents clear error.

The contours of Delta's contractual obligation and breach are detailed in Plaintiffs' Complaint. Compl. ¶¶ 32-35, 114-124. In short, the Conditions of Carriage states "All passenger information shall be handled in accordance with Delta's Privacy Policy." *Id.* ¶¶ 32, 115. The Privacy Policy, in turn, restricts how passenger information may be used and disclosed. So, any use or disclosure beyond that authorized by Delta's Privacy Policy

is a breach.

The Privacy Policy at Section 7 (entitled "With Whom Does Delta Share Your Information") contains an enumerated list of situations in which Delta "may disclose" customer information, including "We may share with third parties anonymous, aggregated information about all our users." *Id.* ¶¶ 33, 116. Section 7 does not authorize Delta to share passenger information in an identifiable manner with third parties for marketing purposes. The result is a contractual agreement to share Plaintiffs' personal information only to the extent disclosed, and in an anonymous and aggregated fashion unless otherwise stated, which Delta violated. *See Copeland v. Home Grown Music, Inc.*, 358 Ga. App. 743, 748-49 (2021) ("the express mention of one thing implies the exclusion of another[,] which, in turn, requires us to conclude that such omission was intentional"). Under Georgia law, Plaintiffs state a claim for breach of contract. Dkt. 13 at 12-14 (discussing contract claim in opposition to motion to dismiss).

Plaintiffs' reading of the contract does not impose external obligations. *See Castanares v. Deutsche Lufthansa AG*, No. CV204261MWFMRWX, 2020 WL 6018807, at *5 (C.D. Cal. Oct. 9, 2020) ("implicit in the Supreme Court's opinion in *Wolens* is that courts would remain free to use general principles of contract law to interpret parties' agreements without running afoul of the ADA"); *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285–86 (2d Cir. 2019) ("in light of what appear to be ambiguities in the contract that Plaintiffs allege Spirit to have breached, and our conclusion that ADA preemption does not apply, Plaintiffs' breach of contract claim was not dismissible on the pleadings").

And Delta's authority on this point is inapposite. Opp. at 9-10. For example, *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2019 WL 1598761, at *5 (C.D. Cal. Feb. 14, 2019) involved an older version of Delta's Conditions of Carriage which did not expressly incorporate Delta's Privacy Policy. Here, the Conditions of Carriage does so. Order at 2. Further, the contract in *Binyomin Ginsberg v. Nw., Inc.*, 2009 WL 9523877, at *7 (S.D. Cal. July 8, 2009) authorized the airline to terminate a customer account "in its sole judgment," so the airline had no obligation to further justify

termination. Finally, *Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1030 (9th Cir. 2010) involved a contractual provision imposing obligations on the customer, not the airline.

**C. Plaintiffs' CIPA Claim is Not Preempted.**

First, Delta argues the correct preemption inquiry is whether Plaintiffs' claims "premised on the handling of their online booking information have a 'connection with' . . . air transportation services." Opp. at 7 (citing Order at 6). Delta oversimplifies the inquiry and mischaracterizes Plaintiffs' theory.

This is not a case about mishandling online booking information used solely for reserved air travel. Plaintiffs allege wiretapping of personal data for marketing purposes unrelated to their actual, booked, air travel. Thus, the correct inquiry is whether Plaintiffs' claims based on wiretapping communications for future marketing unrelated to existing air travel are sufficiently related to Delta's air transportation services.

Second, a claim that has a "connection with or reference to" airline services is not necessarily preempted. Order at 6; Opp. at 6. The connection must be more than "tenuous." As explained by the Ninth Circuit, "a state law connected to prices, routes, or services in 'too tenuous, remote, or peripheral a manner' is not preempted." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 645 (9th Cir. 2014) (citing *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364 (2008)). Preempted claims are those "with a *significant* impact on carrier rates, routes, or services." *Id.* (emphasis in original).

Stated differently, "the Court's job is to draw a line between laws that are 'significantly' 'related to' rates, routes, or services, even indirectly, and thus are preempted, and those that have 'only a tenuous, remote, or peripheral' connection to rates, routes, or services, and thus are not preempted." *Berrin v. Delta Air Lines, Inc*, No. 2:23-CV-04150-MEMF-MRW, 2024 WL 3304815, at *4 (C.D. Cal. Mar. 28, 2024).

In *Berrin*, for example, a false advertising claim was not preempted where the plaintiff "purchased Delta flights due to her belief that by flying Delta, she was engaging in more ecologically conscious air travel." *Id.*, at *1. To determine whether the claim was

"significantly" related to rates, routes, or services, the "proper inquiry" was "whether the provision, directly or indirectly, binds the carrier to a particular price, route, or service and thereby interferes with the competitive market forces within the industry." *Id.*, at *4. The court rejected Delta's contention that the consumer fraud claims "implicate the manner by which Delta transports its passengers"—i.e., services—because (1) Delta's alleged "carbon-neutrality is not achieved through any difference on Delta's actual flights," and (2) the claims "would not bind Delta to any particular service." *Id.*, at *4-6.

So too here. Nothing about Plaintiffs' claims regulates Delta's "services"—defined as the "frequency and scheduling of transportation," or the "selection of markets to or from which transportation is provided." *Charas v. Trans World Airlines, Inc*., 160 F.3d 1259, 1265–66 (9th Cir. 1998). Delta remains free to provide air transportation on its own terms, including the dates, times, and locations of its choosing.

<u>Third</u>, Delta argues that Plaintiffs "fail to address or mention the Supreme Court's decision in *Northwest* or this Court's reliance on that decision." Opp. at 6. But Plaintiffs cited cases applying *Northwest* to argue against Delta's expansive reading of "services." In the Ninth Circuit's words: *Northwest* "does not clarify whether aspects of air travel *other than frequent-flyer programs*, such as ticket kiosks, fall within the scope of the preemption clause." *Nat'l Fed'n of the Blind v. United Airlines Inc*., 813 F.3d 718, 728 (9th Cir. 2016) (emphasis in original).

<u>Fourth</u>, Delta argues the wiretapping claims at issue are analogous to those in *Pica v. Delta Air Lines, Inc*., 2019 WL 1598761 (C.D. Cal. Feb. 14, 2019) and *McGarry v. Delta Air Lines, Inc.*, 2019 WL 1885613 (C.D. Cal. Apr. 16, 2019). Opp. at 7. Not so. The critical distinguishing fact is that *Pica* and *McGarry* involved a data breach. Consumers bought tickets for air travel, their personal data was kept and used for that purpose, and there was a breach and exposure of data. In other words, the airline had and was using the data for its core service—point-to-point air travel—and the plaintiffs did not allege otherwise.

Here, by comparison, the airline is engaged in an entirely different practice. Delta

is aiding a third party (Facebook) in wiretapping passenger communications for Delta to then use in future advertising efforts that are unrelated to the passenger's booked air travel. That fact removes Plaintiffs' fact pattern from *McGarry* and *Pica*, and aligns this case with *Charas* and *Nat'l Fed'n of the Blind*.

Fifth, the public policy behind ADA preemption further distinguishes this case from *Pica* and *McGarry*. By enacting the ADA, Congress sought to "utilize competition and market forces to achieve regulatory goals, such as low-cost, efficient air transportation." *Nat'l Fed'n of the Blind*, 813 F.3d at 729 (citing H.R.Rep. No. 95–1779). But "nothing in the Act itself, or its legislative history, indicates that Congress had a clear and manifest purpose to displace state laws that do not affect deregulation in more than a peripheral manner." *Id.* (cleaned up and quotation marks omitted). Instead, "when Congress enacted federal *economic* deregulation of the airlines, it intended to insulate the industry from possible state *economic* regulation as well." *Id.* (emphasis added). Thus, *Nat'l Fed'n of the Blind* found the airport kiosks not subject to ADA preemption in part because the underlying state law claims would not have a "significant effect on any of those airline services that are covered by the ADA preemption provision." 813 F.3d at 729.

In *Pica* and *McGarry*, the claims sought to "impose additional responsibilities—and liability—on Defendants that would inevitably impact the services provided to consumers." *McGarry*, 2019 WL 1885613, at *5. Among other things, the plaintiffs alleged Delta "owed a duty to . . . exercise reasonable care to secure and safeguard" customer data "from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties" and to "implement processes that would detect a breach of their security systems." *Id.*

Here, however, applying CIPA to an airline has no such "economic" regulatory effect. Rather, the relevant CIPA provision requires only that a wiretapping party obtain the consent of all parties to the communication. California Penal Code § 631(a). This minimal burden (e.g., changed Privacy Policy disclosures) does not impact Delta's

"control of its prices, routes, flights, and other transportation services." *Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*, 2018 WL 4468320, at *2 (N.D. Cal. Sept. 18, 2018). Moreover, Plaintiffs' wiretapping claims do not threaten to interfere with competition in the air transportation services market. No claim affects Delta's ability to provide air transportation services at the price or on the route of its choosing.

For context, the Ninth Circuit previously "recognized that a California regulation against the recording of telephone conversations without warning could be applied *to an airlines' reservation system* and was *not* preempted." *Fed. Exp. Corp. v. California Pub. Utilities Comm'n*, 936 F.2d 1075, 1078 (9th Cir. 1991) (emphasis added) (discussing *Air Transport Ass'n v. Public Util. Comm'n*, 833 F.2d 200, 207 (9th Cir. 1987)).

In *Air Transport Ass'n*, the Ninth Circuit addressed a California Public Utilities Commission regulation that, similar to CIPA, requires consent before a communication may be wiretapped. *Air Transport*, 833 F.2d at 201. A regulation of this type did not relate to "services" as defined by the ADA. *Id.*, at 207. Subsequently, in *Fed. Exp. Corp.*, the Ninth Circuit explained that *Air Transport Ass'n* "should be understood as allowing the state to act in an area of non-economic regulation." *Fed. Exp. Corp.*, 936 F.2d at 1078.

CIPA's privacy protections are likewise non-economic in nature—they have no substantive impact on economic deregulation of airlines. Again, compliance merely requires informed consent.

## II. CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its Order dismissing this action as preempted.

Dated: November 22, 2024 Respectfully submitted,

By: */s/ Alexander E. Wolf*

ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
JOHN J. NELSON (SBN 317598)
jnelson@milberg.com

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872.365.7060

ALEC H. SCHULTZ (*pro hac vice*)
aschultz@hilgersgraben.com
HILGERS GRABEN PLLC
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Telephone: 305.630.8304